## Blakeslee's Express and Van Co. v. Kittie Ford, Adm'x, etc.

1. JURY—*When Its Findings Will Not Bind the Court.*—While a mere preponderance in the number of witnesses is not enough to justify a reversal of a judgment, yet where, in addition to such preponderance against it, the testimony upon which the judgment rests is itself so inconsistent with the physical conditions as to indicate that the witnesses were mistaken, the fact that the jury have passed upon the issues will not bind this court.

Trespass on the Case.—Death from negligence. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1899. Reversed and remanded. Opinion filed July 10, 1900.

JOHN A. POST and O. W. DYNES, attorneys for appellant.

BENSON LANDON and B. C. BACHRACH, attorneys for appellee; WILLIAM S. FORREST, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Appellee sues to recover for the death of her husband, George Ford, alleged to have been caused by the negligence of appellant's servants. At the first trial the court directed a verdict for the defendant, but afterward granted a new trial. A second trial resulted in a verdict of guilty, and damages were assessed at $3,500. From the judgment rendered accordingly, this appeal is prosecuted.

The undisputed facts are that about ten o'clock in the morning of October 31, 1894, a piano truck or wagon

belonging to appellant, was proceeding westward on Washington boulevard, the horses driven by one of appellant's employes. The deceased was riding a bicycle going eastward on the same street. The boulevard was free from traffic and the view unobstructed as the parties approached each other. At a point not far from the intersection of Page street with said boulevard, a collision occurred, the bicycle rider striking full against the end of the tongue of the wagon, and receiving injuries which resulted fatally.

The negligence with which appellant is charged, is based upon the contention that as the wagon was approaching Page street, the driver turned his horses southward as if to turn them down that street; that having crossed to the south side of the boulevard apparently in pursuance of such intention, the horses proceeding at a slow trot, he seemed to change his mind and suddenly swung the horses westward again along the south side of the boulevard, and in front of the bicycle rider, who was misled by the movement and unable to get out of the way.

The controversy hangs mainly upon the position of the wagon on the boulevard at the time of collision. It is contended by appellant that it was on the north or right hand side of the street, where it ought to be; whereas appellee claims that the accident occurred near the south curb and that the wagon was on the wrong side of the street.

The testimony is somewhat conflicting and is said by appellee's counsel to be irreconcilable. One of the latter's witnesses states that the collision occurred "within two or three feet of the south curb of Washington boulevard." But he also states that the injured man, though evidently in great pain, was taken up and helped to the sidewalk on the further or north side of the street. The other one of the two alleged eye-witnesses of the collision who testified in behalf of appellee, states that when the wagon turned, as she says it did, to go toward Page street, the deceased "turned out enough to go back of it," and "would have been all right if the wagon had kept along, but they swung around and the pole hit him." She states that "the horses'

heads were near the curb, when they swung back into Washington boulevard," and about fifteen feet west of Page street.

The witnesses introduced by appellant deny absolutely that the wagon crossed or turned to the south side of the boulevard at all. They state that the horses' heads were not turned southward except when the so-called "zigzag-ing" between the bicyclist and the wagon began, in the effort to avoid collision. Their version is that the deceased, when about a hundred feet from the wagon and apparently without seeing it, turned to his left, northward, as if to cross from the south to the opposite side of the boulevard; that then the driver of the wagon, which was proceeding not more than eight or ten feet from the north curb, in order to give the bicycle room to pass north of him, turned out toward the middle of the street, and that when the collision occurred the wagon was a little north of the center line of the boulevard, or about in the center of the street.

All witnesses upon both sides agree that the injured man was assisted to the north curb, where he first sat and then laid down. This conceded fact, it is urged, tends to corroborate appellant's witnesses as to the location of the wagon at the time of the accident. It scarcely seems prob-able that a man so badly injured and in such pain as the deceased appeared to be, would be deliberately helped or carried nearly across the street to its further side for a resting place, instead of to the nearest curb. No satisfac-tory reason for this is given by appellee's evidence.

Appellant insists that no reason existed and none is shown why the wagon should turn southward toward Page street, as two of appellee's witnesses state appeared to be the driver's intention. The latter swears he had no reason and no thought so to do. He is corroborated in this by uncon-tradicted documentary evidence, tending to show that the wagon was on the way to a house on Washington boule-vard, directly west of where the accident occurred. This was introduced as tending to support the testimony of those on the wagon that no such turning down Page street

was contemplated or made. It is suggested by appellant's counsel that the two witnesses for appellee who were about half a block distant and testify to an apparent turn of the wagon toward Page street, were misled by the efforts made to avoid the collision. The mere fact that such an accident had occurred while a wagon was turning to go down Page street would not of itself sustain a charge of negligence. If a driver actually intended to turn down that street he would have had the right so to do, and persons approaching, whether on a bicycle or other conveyance, would be bound to anticipate such a possibility to the extent, at least, of using ordinary care not to collide with a team thus rightfully turning in that direction. The real question is whether the wagon crossed over to the south side of the boulevard and suddenly swung westward again just before the collision.

It is urged by appellant's counsel that the verdict and judgment are contrary to the overwhelming preponderance of evidence.

As regards number of witnesses, this is undoubtedly true. Of eight alleged eye-witnesses of the collision, six testify in favor of appellant's contention, all of whom practically agree that the wagon was at the time on the north side of the boulevard, where it ought to be, and from thirty to sixty feet west of Page street. Three of these witnesses were then in appellant's employ and were riding on the wagon. Two of them, however, were not in such employ at the time of the trial. The other three were not connected in any way with the parties, and if we except the policeman, the honesty of their testimony is not, so far as we can discover, impeached. Opposed to this evidence are the statements of the two witnesses for appellee who say that they saw the collision, and a third who saw the parties just before and just after they came in contact. While a mere preponderance in the number of witnesses is not enough to justify the reversal of a judgment, yet where, in addition to such preponderance against it, the testimony upon which the judgment rests is itself so inconsistent with

the physical conditions as to indicate that the witnesses were mistaken, the fact that the jury have passed upon the issues, will not bind this court. Jefferson Ice Co. v. Zwicokski, 78 Ill. App. 646, and cases cited. In the case before us, the testimony of appellee's witnesses that the collision occurred as the horses' heads were swung westward, and within two or three feet of the south curb of the boulevard, and ten or fifteen feet west of Page street, is manifestly erroneous. It is practically impossible, unless the horses were headed directly south, that the pole of the wagon, under the conditions stated, should have been so near the south curb in the first place; and in the next place, if the collision had occurred because the horses' heads had been turned southward to go down Page street and were suddenly swung westward again, it must have occurred before the team could have reached a point either ten or fifteen feet west of Page street. To reach such point the wagon would have had to go, after turning westward again, the distance from a point far enough east of the west side of Page street to give room and induce belief that it was about to turn down that street, and while so doing a bicycle rider should have had ample warning and opportunity to change his course, and would probably do so, unless he lost control of his " wheel."

As the case must be tried again, we refrain from further comment. Another trial may clear up the matter, and furnish ground upon which to support a verdict one way or the other. The consequences of the accident are deplorable. But if appellant is to be held responsible, it must appear that the conduct of his employe in charge of the team was negligent. At present there is a preponderance of evidence to the contrary.

The judgment of the Circuit Court must be reversed and the cause remanded.

Mr. Justice SHEPARD dissents.