Austin E. Dodds, appellee, v. Omaha & Council Bluffs Street Railway Company, appellant.

Filed June 7, 1920. No. 20921.

1. **Appeal: Verdict: Review.** The rule that a verdict will not be disturbed when there is evidence tending to support it does not apply where the verdict is opposed to the undisputed physical facts of the case, or is in flat contradiction of recognized physical laws, and where the testimony presented, taken as a whole, is capable of no reasonable inference of such a state of facts as would allow the plaintiff to recover.

2. **Carriers: Injuries to Passenger: Negligence.** Where a passenger alights from a moving street car at a point where it does not customarily discharge passengers, and, without stopping to look or listen, immediately passes behind it so as to suddenly emerge and come in contact with, and be injured by, a car passing in the opposite direction, he is guilty of negligence, and he has no right to assume that, at such place, the motorman on the opposite track will so have his car under control as to be able to make an immediate stop in anticipation of the discharge of passengers at that place.

3. **Negligence: Comparative Negligence: Question for Court.** In an action for damages caused by the alleged negligence of the defendant, where it is shown beyond reasonable dispute that the plaintiff's negligence is more than slight as compared with that of the defendant, the case should not be submitted to the jury, and it is the duty of the court to enter judgment of dismissal.

4. **Evidence: Negative Testimony.** When there is positive and substantial affirmative testimony by a number of witnesses that a gong was sounded; the fact that there is testimony by one or more witnesses that they did not hear the gong and that it did not ring does not authorize that question to be submitted to the jury,

where it is shown that the attention of such witnesses was diverted at the time the gong is said to have rung, and when their position, mental condition and surroundings were not such as would raise a presumption that they would have heard it if it had sounded. Before their negative testimony is entitled to weight, it must appear that they had such knowledge as would justify them in speaking affirmatively in denial of the fact.

APPEAL from the district court for Douglas county: ARTHUR C. WAKELEY, JUDGE. *Reversed.*

*John L. Webster* and *William M. Burton,* for appellant.

*D. L. Johnston, W. J. Connell* and *L. J. Wall, contra.*

FLANSBURG, C.

Action for damages for personal injuries sustained by the plaintiff when struck by one of defendant's street cars. Verdict for plaintiff. Defendant appeals.

Defendant contends that the plaintiff's version of how the accident occurred is contrary to the undisputed physical facts in the case, and that the verdict is not sustained by the evidence and is contrary to law.

The accident happened on Tenth street in front of the entrance to the Burlington station in Omaha. Tenth street runs north and south. Mason street terminates at the entrance to the station and extends west from Tenth street.

Plaintiff arrived at his office that morning, he says, at two minutes before 8 o'clock, gathered together some papers, went out on the street, and at Sixteenth and Farnum streets waited for a street car, intending to catch a Burlington train due to leave Omaha at 8:20.

He boarded a car, which, defendant's testimony shows, would not be due in front of the station until 8:20. The conductor on this car testified that plaintiff showed anxiety about catching the train; that plaintiff asked and was informed as to the time the car would arrive at the station; that the conductor also told him that very often the train would be seen pulling out just as this

street car passed over the viaduct before reaching the station, though at some times passengers on this car made the train. The car that morning passed over the viaduct while the 8:20 train was to be seen standing ready to leave. This witness further testified, and in this he was corroborated by two disinterested witnesses, a passenger on the car, and a newsboy who was standing on the street nearby, that just as the car, as it passed south on Tenth street, reached the north side of Mason street, and while the car was running at a rate of three or four miles an hour, the plaintiff swung off and started to hurry across the track behind it. And witness says that he immediately heard a crash, looked back, and saw the plaintiff lying on the pavement, he having been struck by a north-bound car. The newsboy testified that he, just at that time, was waiting to sell papers to any one who might get off this car, and that he saw the plaintiff alight from the car while it was moving and start to run across the parallel track toward the station, and just at that moment the car on that track struck him. The motorman on the car which struck plaintiff testified that he was in the act of slowing the car to stop at the Mason street intersection, since this was a regular stop and a lady passenger was about to get off, and that his car was running not more than three or four miles an hour, when the plaintiff suddenly came running from the rear of the moving south-bound car, was struck by the corner of the north-bound car, and was thrown back upon the west track. The carmen on both cars and a number of disinterested witnesses tes- tified that the north-bound car was going only three or four miles an hour when it struck the plaintiff, and that the gong was repeatedly sounded while the two cars were passing, just before the accident. Several wit- nesses testified that the north-bound car was stopped within four or five feet after the plaintiff was struck.

The following very significant facts are undisputed: That plaintiff fell to the pavement on the west track and

remained there unconscious at a point from 5 to 10 feet north of the center of Mason street, the paved portion of which street is 60 feet wide, and that the front end of the car which struck him, after it stopped, was only 4 or 5 feet north of the place where plaintiff fell; also that the south-bound car from which the plaintiff alighted made its stop, as was regular and customary, at a place south of the paved portion of Mason street, where it remained standing for some time after the accident occurred. This car stopped at a greater dis-tance than 35 or 40 feet south of the place where the plaintiff fell, and it is further established that, at the moment the plaintiff was struck, the rear end of the south-bound car and the front end of the north-bound car were almost even. Upon these essential facts the evidence introduced by both parties is all in accord.

Plaintiff, however, testified that when riding on the south-bound car he was so sure of having plenty of time to catch his train that he gave it no particular thought and was in no hurry. He denied having any conversation with the conductor, and testified positively that he did not alight from the car until it came to a full stop on the south side of Mason street; that after the car stopped he walked back around the rear end, and, when behind it, momentarily hesitated and listened to see if any car was on the other track; that, hearing no noise, he stepped out and was struck so suddenly that he was given no time even to catch sight of the car that struck him.

Two witnesses testified for the plaintiff. They were railway mail clerks and were waiting at the northeast corner of Tenth and Mason streets for a north-bound street car. They were in conversation with each other, but saw the car approaching, they said, when it was in the middle of the block south of Mason street, and also at a point perhaps a car's length from Mason street, and testified that the car at those places was running from 10 to 15 miles an hour. Neither of them saw the

car from that time until after the plaintiff had been
struck, and were unable to estimate the speed within
the intersection. They both started and looked when
they heard plaintiff struck by the car. One of them
testified that when he looked he saw the plaintiff
shooting through the air like a rocket; that the plaintiff
was thrown horizontally through the air 4 feet from the
ground and about half the width of the street. The
other witness looked in time only to see the plaintiff
lying in the street, but did not see him strike the pave-
ment. He says the ends of the two cars were then
about even, but he could not state how near they were
to the center of Mason street. Neither of them heard
the gong, but their testimony on that was practically
negative. They were engaged in conversation, and very
naturally may have failed to hear the gong, which many
other disinterested witnesses say was sounded. One of
these witnesses for plaintiff, the one who told the un-
natural story of the plaintiff's body being hurled 40 feet,
was positive in his statement that no gong was sounded;
but his testimony shows that he was at that time, stand-
ing at some distance facing away from the scene of the
accident, engaged in conversation, and on cross-exam-
ination he testified that he was not listening for a gong
and had no reason to.

Had the plaintiff alighted from the south-bound car
after it had stopped and proceeded to cross the parallel
track, he could rightfully have assumed that the motor-
man on the opposite car would be expecting passengers
to emerge from the rear of the standing car, and would
have the car so under control as to be able to reduce the
speed to any extent required, or even stop if necessary
to avoid an accident. 36 Cyc. 1515; Bremer v. St. Paul
City R. Co., 107 Minn. 326, 21 L. R. A. n. s. 887.

But the plaintiff's story is inconsistent with the
physical facts in the case. Plaintiff received a brain
injury at the time of this accident. Such injuries have
been known in some cases to obliterate entirely the mem-

ory of all incidents immediately surrounding the accident, and it may be that plaintiff's memory of the exact facts is lacking or has been perverted by the injury that he then received.

But, however that may be, he could not have been struck on the south side of Mason street and have fallen to the pavement north of the center of the street, at least 35 to 40 feet away. There is no testimony on behalf of plaintiff to show the speed of the car within the intersection, and, even though it had been moving at a rate from 10 to 15 miles an hour, as plaintiff contends it had been moving some distance south of Mason street, it would have been impossible that a car going at that rate of speed could have thrown the plaintiff such a distance. Plaintiff gives no reasonable explanation—in fact, none can be given—as to how he could be struck at the south side of Mason street, which position he positively fixes, and have fallen at the place described. No witness says he was carried on the fender. All the testimony is that he fell, and that when he fell he went to the west, landing between the car tracks of the car from which he had alighted. That he so remained on that car track after his fall is one of the undisputed facts in the case.

Plaintiff's counsel contends that plaintiff, after alighting from the car as it stood at the south side of Mason street, may have walked in a northeasterly direction and may have been nearer the center of Mason street when he was struck, but that supposition is in direct conflict with all the conceded facts in the case. The plaintiff's testimony, as well as all other testimony upon that question, is that he was close to the rear of the south-bound car when he started across the other track. In fact, if he had not been, then both he and the motorman on the car which struck him could have seen the danger in time perhaps to have avoided an accident. Plaintiff says that, as he stepped from the rear of the south-bound car, the other car was upon him so sud-

denly that he had insufficient time even to see it, though
he was facing the car when it struck him. This would
not have been true had he been 30 or even 10 feet back
from the rear of the car which he was leaving. All
other testimony, furthermore, points to the fact that
the cars were almost even when the accident occurred.

The physical facts in the case lead irresistibly to
but one conclusion: That the plaintiff was struck at a
point as far north, at least, as the center of Mason
street, and, it being without dispute that he was struck
just as he suddenly emerged from the rear of the
south-bound car, it therefore follows that the car upon
which he had been riding could not then have reached
its stopping place, and that plaintiff must have alighted
near the north side of Mason street and while the car
was running. No other reasonable inference is pos-
sible. The great preponderance of the testimony and
practically all the definite testimony offered, aside from
that of the plaintiff himself, is in strict accord and
consistent with these established physical facts. That
version of the evidence this court is forced to adopt re-
gardless of the jury's verdict, even though the verdict,
by reason thereof, cannot be allowed to stand.

The rule that a verdict will not be disturbed when
there is evidence tending to support it does not apply
where the verdict is opposed to the undisputed physical
facts in the case, or is in flat contradiction of recognized
physical laws, and where the testimony presented, taken
as a whole, is capable of no reasonable inference of such
a state of facts as would allow the plaintiff to recover.
*Spiro v. St. Louis Transit Co.,* 102 Mo. App. 250;
*Blakeslee's Express & Van Co. v. Ford,* 90 Ill. App.
137; *Holden v. Pennsylvania R. Co.,* 169 Pa. St. 1; *Kal-
man v. Pieper,* 158 Wis. 487; *Quigley v. Naughton,* 91
N. Y. Supp. 491; *Hill v. Keezer,* 115 Me. 548; 4 C. J.
856-861.

Where a passenger alights from a moving car and
immediately passes behind it, as that evidence, which is

in accord with the undisputed facts, shows the plaintiff did in this case, he is guilty of negligence, and he has no right to assume that a motorman on a car going in the opposite direction will anticipate that he will suddenly emerge from behind the car from which he has alighted, and therefore no right to assume that such motorman will be in readiness to make an immediate stop. It is true that the motorman must at intersections slow his car and keep a sharp lookout for pedestrians and vehicles. These, through care on his part, he is able to see, but passengers on a moving car are hidden from his view, and he has no way of anticipating that they will alight and suddenly come around the car, except in case of special circumstances or where some general custom is shown which would charge the motorman with the duty of expecting passengers of a passing car, at that place, to so conduct themselves, or where it is evident that the car has stopped, or practically stopped, for the purpose of discharging passengers. *Critchfield v. Omaha & C. B. Street R. Co.*, 99 Neb. 240. In the case just mentioned, holding that such act on the part of a passenger is negligence, as a matter of law the comparative negligence rule (Rev. St. 1913, sec. 7892) was not involved, since the accident upon which that case was based occurred before the statute was enacted. Under that statute the question of negligence is not always for the jury. *Sodomka v. Cudahy Packing Co.*, 101 Neb. 446; *McCarthy v. Village of Ravenna*, 99 Neb. 674; *Disher v. Chicago, R. I. & P. R. Co.*, 93 Neb. 224.

The plaintiff's negligence, as the evidence now stands, appears as the sole contributing cause of the accident. There is little, if any, substantial evidence of negligence on the part of the defendant. Plaintiff's witnesses did not observe and were unable, and did not attempt, to fix the speed of the car within the intersection at Mason street, and, in fact, for some little distance before it reached that street, and their testimony as to the sounding of the gong was of a negative character only, as

hereinbefore pointed out. The testimony on behalf of the defendant, on the other hand, established by several disinterested witnesses, as well as by four car operators, was strong and positive that the north-bound car, at the time of the impact, was running at the rate of only three or four miles an hour, that it stopped within four or five feet after plaintiff was struck, and that the gong was sounded repeatedly.

The fact that plaintiff's witnesses did not hear the gong sounded does not tend to disprove the fact established by strong and positive evidence, where it is shown that their attention was diverted, and where, from their position, the fact that they were engaged in conversation, their surroundings, the noises of street cars passing one another, and the customary noise attendant at railway stations, a reasonable presumption would not arise that they would have heard it if it had sounded. This evidence does not make it appear that the witnesses were possessed of such knowledge as to enable them to deny affirmatively that the gong had sounded. The testimony on behalf of plaintiff as to the ringing of the gong, therefore, is insufficient in this case to require a submission of that issue to the jury. *Critchfield v. Omaha & C. B. Street R. Co.*, supra; *Rickert v. Union P. R. Co.*, 100 Neb. 304; *Hajsek v. Chicago, B. & Q. R. Co.*, 5 Neb. (Unof.) 67; *Chicago, R. I. & P. R. Co. v. Sporer*, 69 Neb. 8; *Zancanella v. Omaha & C. B. Street R. Co.*, 93 Neb. 774; *Culhane v. New York C. & H. R. R. Co.*, 60 N. Y. 133; *Hoffard v. Illinois C. R. Co.*, 138 Ia. 543; *Britton v. Michigan C. R. Co.*, 122 Mich. 359.

It occurs to us, from the record as it now stands, that the negligence of the plaintiff was so much in excess of being slight, as compared with that of the defendant, that, as a matter of law, plaintiff was not entitled to have that question submitted. The evidence, therefore, is insufficient to support a verdict, and, in

order to avoid an apparent miscarriage of justice, a new trial should be granted.

We therefore recommend that the judgment be reversed and the cause remanded for further proceedings.

Per Curiam. For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, and this opinion is adopted by and made the opinion of the court.

REVERSED AND REMANDED.