MARTHA OLIVER, APPELLEE, V. UNION PACIFIC RAILROAD . COMPANY, APPELLANT.

FILED NOVEMBER 10, 1920. No. 21385.

1. **Evidence:** REVERSAL. Where evidence essential to a recovery by plaintiff is clearly disproved by physical facts and conditions, a verdict in his favor should be reversed.

2. ———: NEGATIVE TESTIMONY. "When there is positive and substantial affirmative testimony by a number of witnesses that a gong was sounded, the fact that there is testimony by one or more witnesses that they did not hear the gong and that it did not ring does not authorize that question to be submitted to the jury, where it is shown that the attention of such witnesses was diverted at the time the gong is said to have rung, and when their position, mental condition, and surroundings were not such as would raise a presumption that they would have heard it if it had sounded. Before their negative testimony is entitled to weight, it must appear that they had such knowledge as would justify them in speaking affirmatively in denial of the fact." *Dodds, v. Omaha & C. B. Street R. Co.,* 104 Neb. 692.

3. **Evidence** examined, and *held* insufficient to support the verdict of the jury.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Reversed.*

*C. A. Magaw, Thomas W. Bockes* and *Thomas F. Hamer,* for appellant.

*W. D. Oldham* and *Ed P. McDermott, contra.*

ALDRICH, J.

This is an action at law in which plaintiff alleges that on May 3, 1916, she was a passenger in an automobile driven by Frederick Shieck on one of the public streets of Shelton, which street crosses the tracks of defendant company at the second crossing east of defendant's depot; that plaintiff was a guest together with her two little children occupying the back seat of the automobile; that the automobile approached the crossing of defendant railroad com-

pany from the south side while going north on the public street over the crossing; that at this crossing there are two main tracks, one known as the east-bound track, the other as the west-bound track; that immediately south of the east-bound track is a switch extending westward from the crossing at which the injury occurred close to a building known as the Alfalfa Mill; that on said switch there was a string of box cars extending from the Alfalfa Mill to about 20 feet from the crossing; that the cars obstructed the vision to the west of the railroad; that the automobile in which plaintiff was riding as a passenger carefully approached the crossing; that plaintiff listened carefully for any signal either by the whistle or ringing of the bell; that, as soon as the automobile in which plaintiff was riding passed the line of freight cars which obstructed the west vision as they approached closely to the east line of defendant's track, they suddenly observed an engine and a tender in the charge of defendant John Sleuter, the engineer; that said engine was within about 40 feet of the crossing on the house track when discovered; that the driver, Frederick Shieck, tried to stop his automobile, but the momentum carried it farther north onto the south rail of defendant's east-bound track; that with the front wheels in that position it was struck by defendant's engine operated and controlled by defendant John Sleuter.

This collision caused an injury to plaintiff's left knee and was a general shock to her nervous system, and there were also other internal injuries alleged to have been caused. The jury returned a verdict of $4,500 in plaintiff's favor, and defendant appeals.

This in the main is a fair statement of the claims made by plaintiff and contains a fair statement of the facts and issues upon which the case was tried.

The first issue tendered in the trial of this case is: Was the defendant company negligent? An answer to this proposition is decisive of this case.

The modern invention and universal use of the automobile created a different situation in the matter of accidents

at railroad crossings than has heretofore prevailed. In former times the collision of a ponderous locomotive with a horse and buggy incurred comparatively little danger of injury to the locomotive or passenger coaches. Today locomotives colliding with a rapidly moving touring car composed of steel and heavy iron are in danger of destruction, and it is extremely hazardous to the lives of passengers in passenger coaches. Hence there must be a different responsibility imposed upon the railroad management and individuals driving automobiles. The traveling public is entitled to the highest degree of care and skill to avoid accidents which happen all too often in these modern days.

Then, the question for decision here is: Was the defendant guilty, and did this accident originate by reason of its negligence? We answer, the switch engine and the cars had the right, as a matter of law, to be on this track where the accident occurred, for the purpose of placing some cars. The distance from the house track to the track in question was about 40 or 45 feet. It is true that the automobile driver coming from the house track had his view somewhat obstructed by freight cars, but before arriving at the track in question he and the occupants had a clear and unobstructed view to the west of where the automobile was being driven. The record shows that the automobile was moving at the rate of five or six miles an hour. Then the car was under absolute control. Pressure upon the foot brake would have stopped it almost instantly. The switch engine on the main track was coming to the east at six or eight or ten miles an hour. The signal was given to stop the engine or to slow down. The engineer saw and acted upon this signal, but was unable to stop before reaching the crossing where the collision took place. That this signal and attempt to stop was acted upon by the engineer is testified to by two brakemen who were riding on the tender of the engine. The automobile continued to come on at the same rate of speed with which it ran over the house track, and in this way the engine and the automobile collided as the car came upon the main track, which was

being used for switching purposes. Now, under this state of facts, was there any negligence on the part of the railroad company?

It is conceded that the plaintiff submitted an array of witnesses to prove that the bell was not rung and the whistle not sounded as the train proceeded to the eastward from the west, but this class of evidence is negative and has but little probative force as compared to the positive testimony of several other witnesses that signals were given. For instance, Mrs. M. O. Tillotson, who resided near the track and the scene of the accident, saw this train as she was hanging out her clothes at the north side of the house, and the smoke from the train and dust stirred up by it was soiling the newly washed clothes, and her attention was particularly drawn to this train that caused the accident. She knew whether the whistle was blowing and the bell ringing, and her evidence is positive as to that fact. She testified that she heard a bell ringing, following which she heard a scraping noise and the scream of a woman. She turned and saw the automobile just after the accident had occurred. Then there is another witness, who also resided near the scene of the accident, who had two nephews boarding with her. She was especially interested in this train because these boys were freight haulers who took the goods as they were unloaded from the train, and as soon as they were unloaded the boys were to come to dinner. She had an especial reason to note whether the bell was rung or the whistle blown, because from these signals she could tell when the freight was unloaded and they would come to dinner, and in this way she could determine whether she would be able to go to the decoration day exercises held at the opera house.

Then there is the testimony of a traveling man, to wit, R. B. Cromwell, who was upon the step of a caboose of a train in sight of the accident and was in a position to know affirmatively whether signals were given or not. From his positive testimony it appears the bell was ringing and the whistle was blown as the engine and tender pro-

ceeded from the west to the east.   This witness saw the accident at the crossing.   On the proposition as to whether or not there was proper lookout as testified to negatively by the plaintiff's witnesses, several of defendant's witnesses positively say there were two brakemen riding on the tender of the engine as it proceeded backward to the crossing where the accident occurred.   These brakemen saw the approaching automobile and before it reached the scene of the accident signaled the engineer to slow down or stop. And immediately before going upon the crossing these two brakemen jumped from the tender and escaped the accident.   This in substance is the testimony of fact given by two witnesses who were there and present at the collision. The witnesses of plaintiff do not deny but what they may have been on the engine, but say they did not see any one riding on the tender as lookouts.   This kind of evidence is but little assistance in determining whether there was any lookout.   There is more of defendant's evidence in the record to support defendant's position, but it is sufficient to say for the purposes here that the evidence establishes the fact that warning was given and proper lookout kept.

A very late case from this court is materially helpful in arriving at a conclusion in the instant case.   The first and fourth syllabus points in the case of *Dodds v. Omaha & C. B. Street R. Co.,* 104 Neb. 692, are as follows:

"1. The rule that a verdict will not be disturbed when there is evidence tending to support it does not apply where the verdict is opposed to the undisputed physical facts of the case or is in flat contradiction of recognized physical laws, and where the testimony presented, taken as a whole, is capable of no reasonable inference of such a state of facts as would allow the plaintiff to recover."

"4. When there is positive and substantial affirmative testimony by a number of witnesses that a gong was sounded, the fact that there is testimony by one or more witnesses that they did not hear the gong and that it did not ring does not authorize that question to be submitted to the jury, where it is shown that the attention of such witnesses

was diverted at the time the gong is said to have rung, and when their position, mental condition, and surroundings were not such as would raise a presumption that they would have heard it if it had sounded. Before their negative testimony is entitled to weight, it must appear that they had such knowledge as would justify them in speaking affirmatively in denial of the fact."

This case is in point in showing what the law is upon the reception of negative testimony by this court.

In view of all the evidence and especially the positive testimony of several witnesses of defendant that a warning was given and proper lookout kept, we are of the opinion that the evidence was insufficient to support a verdict in favor of plaintiff. The case is therefore reversed and remanded.

REVERSED.

MORRISSEY, C. J., not sitting.