EDWIN G. HOOK, APPELLEE AND CROSS-APPELLANT, V. JOHN BARTON PAYNE, DIRECTOR GENERAL OF RAILROADS, APPELLANT: JOHN MINOGUE ET AL., CROSS-APPELLEES.

FILED NOVEMBER 13, 1922. No. 22125.

1. **Trial:** VERDICT. Where in a negligence damage suit against a corporation and certain of its employees there is a plea of con-

tributory negligence on the part of the defendant, and evidence tending to establish the same, the jury may, if the evidence justifies it under the comparative negligence rule, find in favor of said employees and against the corporation.

2. **Evidence:** NEGATIVE EVIDENCE. If the witness was in such exceptional position, by reason of proximity and interest in what was going on, that by seeing or hearing he ought to have known that the thing in question was or was not done, and if this appears by way of foundation, he will be held to have knowledge through the medium of his senses which enables him to affirm, and his testimony that the thing was not done may be received to contradict the positive testimony of another that it was done; nor does admission of the possibility of error on the part of said witness alter the case.

3. **Evidence** examined, and *held* sufficient to support the verdict.

APPEAL from the district court for Dodge county: A. M. POST, JUDGE. *Affirmed.*

*C. A. Magaw, Thomas W. Bockes* and *Douglas F. Smith,* for appellant.

*Abbott, Rohn & Robins,* for appellee.

*F. Dolezal* and *Thomas F. Hamer,* for cross-appellees.

Heard before MORRISSEY, C. J., ROSE, ALDRICH and FLANSBURG, JJ., SHEPHERD, District Judge.

SHEPHERD, District Judge.

This is a railroad crossing accident case. The plaintiff was severely and permanently injured, and sued the company (per John Barton Payne, Director General) on the theory that the collision occurred by reason of its negligence, first, in that its engineer ran the crossing at a high and dangerous rate of speed without giving the statutory signals and without keeping a proper lookout; secondly, in that it permitted weeds to be upon its right of way at or near the crossing so as to prevent the plaintiff from a timely view of the train, and the engineer from a timely view of the plaintiff and his automobile; and, thirdly, in that another of the defendant's engineers, the engineer of a second train which was lying at the cross-

ing, motioned plaintiff to come across. The accident happened at what is known as the Middaugh crossing, a short distance east of Ames, Nebraska, and in it plaintiff's car was struck by Union Pacific Flyer No. 1 westbound from Fremont. It is not disputed that the train was going 50 or 55 miles an hour. It commonly ran at that speed, and, being behind time upon this occasion, it was perhaps exceeding schedule. There is much dispute as to whether the whistle was blown and the bell rung, and also in regard to weeds and the degree to which they obscured the view. Plaintiff's witnesses say that they stood uncut on the right of way and along the right of way fence, and greatly interfered with seeing an approaching train. On the other hand, defendant attempts to show that they were negligible in effect. The road on which the crossing was located led from the Lincoln Highway, 90 or a 100 feet north, in an "S" shaped meander across the track. This meander had a considerable depression in it and was rough, rutted and hard to drive.

The defendant company claims that the verdict was not supported by the evidence, a contention which is somewhat helped by the fact that the jury, though finding against the company in the sum of nearly $15,000, returned a verdict in favor of both of said engineers who were joined as party defendants. It cites *Zitnik v. Union P. R. Co.,* 91 Neb. 679, in support of this contention. That case was the subject of a vigorous dissent by Judges Reese and Fawcett; but, conceding the soundness of its majority opinion, the facts were so different that it can hardly have controlling application in the case at bar.

There was but one allegation of negligence pleaded, *i. e.,* that the defendants negligently ran an engine over the plaintiff, and no issue of contributory negligence whatever. The rule of comparative negligence prescribed by section 8834, Comp. St. 1922, was therefore not involved. Here contributory negligence is made prominent in both pleadings and evidence, and the rule referred to is unquestionably invoked. Obviously, the jury might

Hook v. Payne.

have properly found that there was negligence on the part of engineer Minogue—for instance, on account of his running the crossing so fast when his view of its approach from the north was partially obstructed—but not enough to amount to gross negligence in comparison with that of the plaintiff, and hence not enough to hold him liable. And yet, imputing such negligence on the part of its engineer to the company under the doctrine of *respondeat superior*, and finding, as it could have found, that the company was also primarily negligent in not cutting the weeds, the jury may have been convinced that the company was guilty of comparative gross negligence, and so have found against it. A number of similar combinations might be taken from the evidence to further illustrate. We do not view the *Zitnik* case as applicable to the different facts of this case.

Nor are we able, after a careful examination of the testimony, to say as a matter of law that the negative testimony of the plaintiff on the ringing of the bell and sounding of the whistle was not sufficient to contradict the positive testimony of the trainmen that these things were actually done, so as to make a question for the jury. Negative testimony sufficient to afford such contradiction should be from such knowledge through the medium of the senses as would enable the witness to speak affirmatively. But to speak affirmatively is not to speak infallibly. To give such interpretation to the word would be absurd. Infallibility is an attribute only of the Infinite, and no human knowledge derived from the senses can approach it. And the converse is equally true. Though the testimony be the most positive, though the witness may say, "I did," the possibility of error still remains. The witness Frank Mundy was close at hand, interested in the operation of the passing train because it was new to him, looking and listening, observing its speed, standing at gaze to see what he could see in connection with it. He said all this on direct examination, and testified that the train did not whistle. On

cross-examination he admitted the possibility that it may
have whistled, but repeated that he did not think that
it did. The facts being as stated, it is fair to say that
he had knowledge derived through the medium of his
senses which enabled him to affirm that the whistle was
not sounded. Admitting the possibility that it might
have been sounded does not detract from the certainty
of his affirmance. It simply betokens an understanding
of the limitations of human sense. The conditions were
such that he should have seen and heard and known.
When he spoke first and said that the whistle was not
blown, he spoke with all the certainty of the engineer
when the latter said that it was blown. This satisfied
the rule and made his evidence proper to be considered
by the jury as contradicting the testimony of the en-
gineer and other trainmen.

. It follows, then, that there was evidence from which
the jury might reasonably find in favor of the plaintiff
and against the defendant company, even though we
adopt the contention of said company that weeds alone
cannot constitute an independent actionable element of
negligence, unless it be decided by this court as a mat-
ter of law that the plaintiff was guilty of more than
slight negligence in driving upon the track.

The question thus reached is one of much difficulty.
It is commonly hard to understand how a plaintiff could
have been struck on a crossing had be been in the exer-
cise of due care. But the trouble is, the student of these
cases sees so much of injury and disaster which might
have been avoided by the exercise of just a little more
care that his standard of ordinary care keeps continu-
ally advancing in the interest of preventing accident. The
thing to be decided, however, is not what the court would
have done had the question of fact been presented to it
in the first instance, but whether or not there was evi-
dence respecting the act of the plaintiff from which rea-
sonable men might find him entitled to a recovery ac-
cording to the forms of law.

Plaintiff approached the crossing by the muddy little meander leading from the Lincoln Highway. Granting, as a number of the witnesses besides the plaintiff testify, that the weeds grew high along the east side of this short road, obstructing the view of the track for a distance variously estimated from 100 to 300 yards, it is understandable that a reasonably careful man, somewhat confused with the difficulties of the road and with his Ford running noisily in low, might have driven on to the right of way without being aware of the proximity of the train. And from there his rate of speed would carry him to the track in just about the time that it would take the flyer to traverse a distance of 250 or 300 yards and run him down. The company insists, and its photographs to some extent support it, that a first view from the plaintiff's car after it was on the right of way must, if it was really taken, have discovered the approaching train. But Mrs. Middaugh and the witness Mundy, as well as plaintiff, testify that the weeds not only grew in and along the right of way fence but stood uncut out in the right of way where the old Northwestern switch had been, still obstructing the view of the track to the east and obscuring the approach of the train. Both engineer and fireman say that they did not see plaintiff's car till they were right upon it, though it must have been within their line of vision save for these weeds or some other obstruction. The car was going at 5 miles an hour, the train at nearly 60. Plaintiff says that he was about to stop entirely at a point approximately 15 feet north of the track, but, catching the signal of the freight engineer who stood near his engine on the south track, he looked no further and drove across.

It is probably true that, had he looked and listened at this point, he could and would have stopped his car and avoided the collision. But the question with which we are concerned is whether or not in ceasing to look further and driving on in obedience to the signal of said engineman he abandoned the exercise of ordinary care,

and, if so, whether or not his negligence in this regard was more than slight. We feel sure that both of these inquiries, certainly the latter, should be answered in the negative. The engineer on the south side stood where there was nothing whatever to obstruct his view, and his character as a railroad man upon duty gave authority to his act and inspired confidence in his direction. That his authority was less real than apparent makes no difference. His act justified the plaintiff in relaxing his own lookout and in accepting that of the engineman in its stead. Prudent persons would have done as the plaintiff did. Perhaps a surpassingly cautious man would have made absolutely sure, but such abnormality of care is neither expected nor required....

Of course, in thus resolving the evidence, every proper presumption has been indulged in favor of the plaintiff, and the fullest credence warrantable has been given to the testimony of all of his witnesses. This is as it should be when the reviewing court passes upon an assignment of error challenging the sufficiency of the evidence to sustain the verdict.

Counsel for the company has not failed to set forth the rule of care required of him who essays to cross a railroad track, and to marshal law and facts in a masterly way in support of his contention for a reversal. But the rule in *Rickert v. Union P. R. Co.,* 100 Neb. 304, and *Askey v. Chicago, B. & Q. R. Co.,* 101 Neb. 266, finds exception in the facts of this case. One should look where he may see and listen where he may hear, is the doctrine in these cases. But the court expressly adds, *and if he fails to exercise such precautions without reasonable excuse he cannot recover.* We have before referred to the circumstance which afforded the plaintiff an excuse for not looking further when he was about to stop on the north of the track, but caught the signal of the trainman and went on. We think that such excuse was reasonable, as hereinbefore indicated, and that in connection with other things it was sufficient to warrant the

trial court in submitting the case to the jury.

Not deeming it necessary to decide whether or not weeds and grass upon the right of way may be an independent basis of recovery in a negligence case, and holding the views above expressed as to the sufficiency of the evidence to sustain the verdict, the court is of opinion that the decision of the lower court should be affirmed

AFFIRMED.