FRANK PONGRUBER, APPELLEE, V. JOHN PATRICK, APPELLEE,
IMPLEADED WITH LAWRENCE P. PATRICK, APPELLANT.
61 N. W. 2d 578

Filed December 18, 1953.   No. 33401.

*Kennedy, Holland, DeLacy & Svoboda* and *Donald P. Lay,* for appellant.

*Wear & Boland,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought by the plaintiff, Frank Pongruber, against John Patrick and Lawrence P. Patrick, defendants, in the district court for Douglas County. The defendant John Patrick, father of Lawrence P. Patrick, was dismissed from this action as a party defendant. The plaintiff seeks to recover damages resulting from an intersection accident by the collision of an automobile driven by him and an automobile driven by the defendant Lawrence P. Patrick. The case was tried before a jury, resulting in a verdict in favor of the defendant on the plaintiff's petition, and for the plaintiff on the defendant's counterclaim, with no damages to either party. The plaintiff moved for a new trial which was sustained. From the order granting the new trial, the defendant has appealed to this court.

The appellant assigns as error that the trial court was in error in granting a new trial, for the reason that the record in this case discloses no legal reason why a new trial should be granted, and the granting of a new trial constituted an abuse of discretion on the part of the trial judge.

The appellee filed his motion for new trial within the time provided, specifically set forth the grounds therefor in accordance with section 25-1142, R. R. S. 1943, and specifically challenged each and every instruction given by the trial court.

The appellant cites Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772, and quotes therefrom the following language: "A new trial is to be granted for a legal cause and where it appears that a legal right has been invaded or denied. A new trial is not to be granted for arbitrary, vague, or fanciful reasons. * * * Where a party has sustained the burden and expense of a trial and has succeeded in securing the judgment of a jury on the facts in issue, he has a right to keep the benefit of that verdict unless there is prejudicial error in the proceedings by which it was secured." See, also, Scherz v. Platte Valley Public Power & Irr. Dist., 151 Neb. 415, 37 N. W. 2d 721; In re Estate of Kinsey, 152 Neb. 95, 40 N. W. 2d 526; Keiserman v. Lydon, 153 Neb. 279, 44 N. W. 2d 513.

In the instant case the trial court gave no reasons for its decision. In this connection, the appellant cites from Greenberg v. Fireman's Fund Ins. Co., *supra,* as follows: "If, as in the instant case, the trial court gave no reasons for its decision, then the appellant meets the duty placed upon him when he brings the record here with his assignments of error and submits the record to critical examination with the contention that there was no prejudicial error. Under these circumstances the appellant is not required to establish a negative. The duty then rests upon the appellee to point out the prejudicial error that he contends exists in the record and which he contends justifies the decision of the trial court. The appellant then in reply has the right, if he desires, of meeting those contentions.

"By that process the questions to be determined here are presented in a practical manner. Those errors will then be considered and determined here so far as neces-

sary to the appeal, subject, of course, to our right to notice and consider plain errors not assigned Such a procedure fully protects the rights of the parties." See, also, Keiserman v. Lydon, *supra;* In re Estate of Fehrenkamp, 154 Neb. 488, 48 N. W. 2d 421.

The appellee makes reference to section 25-1142, R. R. S. 1943, which provides: "A 'new trial' is a re-examination in the same court of an issue of fact after a verdict by a jury, report of a referee, or a decision by the court. The former verdict, report or decision shall be vacated and a new trial granted on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of such party; (1) irregularity in the proceedings of the court, jury, referee or prevailing party, or any order of the court or referee, or abuse of discretion, by which the party was prevented from having a fair trial; * * * (8) error of law occurring at the trial and excepted to by the party making the application."

The district court has the power and is required to consider and determine motions for a new trial by the exercise of its judicial discretion. As used in this connection judicial discretion means the application of statutes and legal principles to all of the facts of a case. If a legal reason exists and the complaining party makes his application in writing within the time fixed by statute, the court has no discretion in the matter and the motion must be sustained. See Sautter v. Poss, 155 Neb. 62, 50 N. W. 2d 547; Greenberg v. Fireman's Fund Ins. Co., *supra.*

The record discloses that at the time of the accident the appellee was engaged as a boiler gas maker for the Metropolitan Utilities District in Omaha, and had been so employed for 23 years. He was 64 years old at the time of the accident, and owned a 1931 Victoria type model A Ford automobile, in good mechanical condition. The Metropolitan Utilities District plant is located at Twentieth and Center Streets in the city of Omaha.

The appellee worked the midnight shift from 11 p. m. to 7 a. m. He did not always wait until 7 a. m., but would leave the plant when his relief arrived.

The appellant, Lawrence P. Patrick, was 21 years of age at the time of the accident and resided in Carson, Iowa, but was working in the city of Omaha for the Wilson Packing Company. He lived at 3510 Dodge Street where two of his friends from Carson, Iowa, also lived. They were also employed in packing plants. The appellant was the owner of a 1947 eight cylinder Oldsmobile which was in good mechanical condition and equipped with four-wheel hydraulic brakes.

The accident occurred at the intersection of Thirty-second Avenue and Center Street in Omaha at about 6:30 a. m., January 15, 1951. It was dark, the temperature was 35 degrees Fahrenheit, and the pavement was dry. The street lights were still on, and the lights of both the appellant's and appellee's automobiles were on. The topography of the intersection is briefly as follows: Thirty-second Avenue is 43 feet wide from curb to curb and slopes gently downward in a north-south direction so that the view is not obstructed for a driver coming from either direction toward Center Street which is 40 feet wide and almost level and comes from the west into Thirty-second Avenue, but not through Thirty-second Avenue. This intersection is commonly known as a "T" intersection. There were no slow signs near the intersection, but there were signs indicating to traffic approaching Center Street from the north that the speed limit was 25 miles an hour at the time of the accident.

On the morning in question, the appellee left the gas plant at 6:20 or 6:22 a. m. He testified as to the course he took to arrive on Thirty-second Avenue, then to proceed north to Center Street. He was driving alone. The window on the left side of his car was open when he approached the intersection of Thirty-second Avenue and Center Street. He was traveling about 25 miles an hour, and as he approached the intersection he was about

in the middle of the street. He testified that when he was about 100 feet distant from the intersection of Thirty-second Avenue and Center Street he held his hand out in a horizontal position to indicate that he was going to make a left turn, or turn to the west, from Thirty-second Avenue into Center Street. At that time he was driving at a rate of speed of 15 miles an hour. When he made the turn, he was 3 or 4 feet from the north curb of Center Street. He made a "square" turn. He observed a car approaching from the north proceeding south on Thirty-second Avenue as he approached Center Street. At that time the appellee was 100 feet south of the intersection, and that is the time when he gave the signal. The other car, which turned out to be the appellant's car, was at that time about 200 feet north of the intersection. The appellee saw the headlights on the appellant's car. When the appellee turned west onto Center Street, he testified that half of his car was in the intersection and the other half out, but that it was going straight west when it was struck by the appellant's car.

A witness, H. M. Reynolds, a bricklayer and employee of the Metropolitan Utilities District and acquainted with the appellee, testified that on the morning of the accident he was driving his 1929 Nash automobile in the vicinity of Thirty-second Avenue and Center Street at a rate of speed of 15 or 20 miles an hour. He had come from his home and was proceeding to work, driving on Center Street, traveling from the west on the right side of the street. When about 100 feet from the intersection he observed the headlights of a car turn into Center Street toward him on the opposite side of the street. This car seemed to be pretty far over on its own side of the street, about 5 feet distant from the north curb. This witness pulled his car into the curb after he heard a crash, and at that time was 60 or 70 feet from where the collision occurred. He went to the scene of the accident to see if anybody was hurt, and noticed a man leaning on the steering wheel. He endeavored to jerk

the door of the car open. The man did not talk. He pulled him out of the car. The appellee's car was standing on Thirty-second Avenue, headed south, about 7 feet from the corner curbline. No part of this car was in Center Street. Two wheels of the car were over the west curb of Thirty-second Avenue. The appellant's car was 100 feet down Thirty-second Avenue, parked against the curb.

The appellant testified that it was necessary for him to be at work at 7 a. m. in the Wilson packing plant, and that he usually got up at 6 a. m. and had breakfast at Harkert's at Thirty-fifth and Farnam Streets. Normally, after leaving that point he would proceed south on Thirty-second Avenue. He was driving his car about 10 feet from the west curb of Thirty-second Avenue at a speed of 25 or 30 miles an hour. His headlights were on, and would illuminate an object at a distance of 150 feet ahead of him. He was looking straight ahead. He observed a car approaching when he was approximately half a block north of Center Street. He could only see the headlights of the car. He saw no hand signal of the intention on the part of the driver of that car to make a left turn, or west turn, into Center Street. When he was 5 feet north of the curbline of the intersection of Center Street, the appellee crossed ahead and in front of his car. At that time the appellee was on the south side of Center Street, heading in a northwesterly direction. The appellant testified that when he saw the appellee's car he put on his brakes and slid a distance of 6 or 8 feet before the brakes took hold. The impact occurred about the center of the intersection, and the right front of the appellant's car came in contact with the appellee's car. After the impact, appellant's car was 20 feet from the intersection headed south at a slight angle; the appellee's car was 15 feet north of the appellant's car. After the accident the appellant went back to the place where it had occurred and observed skid marks 6 or 8 feet in length north of the center line of

Center Street. There was debris at the point of impact at about the center of the intersection, but none of the debris was on Center Street. While he was proceeding south on Thirty-second Avenue, his friend Lyle Mc-Clean was following him at a distance of approximately 100 feet. He further testified that he did not notice the headlights on the appellee's car when it turned left, or west. He did not sound his horn, nor did he turn either to the right or left. When his car struck the appellee's car it·was headed slightly in a northwesterly direction, and when the accident was over, the appellee's car was headed south. The back of it was approximately 5 feet from the south curbline of the intersection. When the appellee made his turn to the left or west he was not in the appellant's line of vision. The appellant noticed no visible sign of the appellee's intention to make the left turn. The front end of his car came in contact with the appellee's car. The grille and radiator were substantially damaged, as well as other parts of the car, and the right front tire was blown out.

The appellee's car, it appears, was struck at the right hand door. The right front fender was bent in, the right rear fender was torn up, and both the right rear tire and the right front tire were down.

The witness Lyle McClean testified that he roomed at the same rooming house as the appellant, and ate breakfast at the same place. He was employed at Armour's packing plant, and reported for work at 7 a. m. On this day he proceeded south on Thirty-second Avenue right behind the appellant's car. As they approached the intersection of Thirty-second Avenue and ·Center Street, the appellant was about a block ahead of him. His opinion was that they were both driving at a rate of speed of 25 miles an hour, and kept close to that speed, with the exception that there might have been some slight variance in the speed of the appellant's car. He noticed the appellee's car when it turned left, or to the west, at the intersection. It was right in the intersection· when

he heard the crash. The appellant's car was right at the intersection. The appellee's car was hit right at the door. After the accident this witness brought his car to a stop in front of the appellant's car and then went back to see how the appellant was. There was no one else there. He was the first to see the appellant who appeared to be dazed and could not stand up. After turning the lights off on the appellant's car, he walked to the other car. He noticed the appellee in his car, on his knees, moaning. The next person to arrive at the scene of the accident was a cab driver. This witness requested him to take him to a telephone. The cab driver stated that he had a phone in his cab and would call the police. This witness further testified that the appellee's car was 5 feet from the curbline, facing south, and no part of it was over the curb. The appellant's car was sitting at an angle; the right front wheel was hitting the curb and the back of the car extending out from the curb 6 or 8 feet. He noticed debris to the south side of the intersection, and none to the north thereof to amount to anything. When he first noticed the lights on the appellee's car, it was not in the intersection. This witness was about 300 feet north of the intersection when the appellant was in the intersection. He saw the appellant's car hit the appellee's car, and it looked like the appellee's car swerved to the left. It was knocked around in that position, or spun to the south, that is, the front end of the appellee's car. He told about the parties being taken to the hospital and that he subsequently took the appellant home.

The appellee predicates error on the giving of certain instructions by the trial court to the jury, which we set out in substance.

The trial court, by instruction No. 3, informed the jury: "* * * The defendant further says that the collision was in no wise the result of any negligence on his part but was the direct and proximate result of negligence of the plaintiff himself, which negligence was more than

slight and was as follows: 1. In plaintiff's making a left turn at the intersection of 32d Avenue and Center without giving a visible signal at a time when the defendant was so close to the intersection that defendant's car created an immediate hazard."

In instruction No. 8, the trial court informed the jury: "* * * The driver of a vehicle approaching but not having entered an intersection shall yield the right-of-way to a vehicle within such intersection and turning therein to the left across the line of travel of such first-mentioned vehicle, provided the driver of the vehicle turning left has given a plainly visible signal of intention to turn. * * * A signal of intention to turn right or left shall be given continuously during not less than the last 50 feet traveled by the vehicle before turning. All signals required shall be given by the hand and arm from the left side of the vehicle in the following manner: left turn, arm and hand extended horizontally."

The appellee's contention is that such instructions were erroneous and constitute prejudicial error for the reason that the trial court submitted the issue of appellee's contributory negligence in making a left turn when there was not sufficient evidence from which the jury could find that appellee failed to give a visible signal, or a "plainly visible signal."

The appellant contends that where two automobiles collide at night, or as in the instant case under conditions of darkness, as the driver of one automobile is making a left turn in front of the other and that driver testified he gave a signal to indicate he was going to turn to the left and the other driver testified he did not see such a signal, there being no other witnesses that could testify with reference to such matter, an issue is formed for the jury as to whether or not an adequate signal was given by the driver of the automobile making the left turn. We will not repeat the evidence on this point previously set out, but direct attention to it.

The appellee cites Nanfito v. Chicago, B. & Q. R. R.

Co., 103 Neb. 577, 173 N. W. 575; Dodds v. Omaha & C. B. St. Ry. Co., 104 Neb. 692, 178 N. W. 258; Oliver v. Union P. R. R. Co., 105 Neb. 243, 179 N. W. 1017; De Griselles v. Gans, 116 Neb. 835, 219 N. W. 235; Miller v. Abel Construction Co., 140 Neb. 482, 300 N. W. 405. These cases are cited by the appellee to sustain his proposition of law as follows: Where there is positive and affirmative testimony by a witness that a signal was given, the fact that there is testimony by a witness that he did not see the signal does not make a disputable issue of fact to be submitted to the jury, where it is not shown that the attention of the witness was directed toward the signal at the time it is said to have been given, and where his position, mental condition, and surroundings were not such as would raise a presumption that he would have seen it if it had been given. These cases deal with the effect of positive testimony as against testimony negative in character and disclose the inherent weakness of negative testimony under the facts shown in the cases.

The appellee cites Annotation, 98 A. L. R. 161, as follows: "The rule in regard to positive and negative evidence is sometimes stated in the form of a 'rule of thumb,' it being said that, where there are two witnesses, one testifying to the occurrence of an event, and the other testifying to its nonoccurrence, and the witnesses are of equal credibility, the testimony of the witness asserting the affirmative of the issue will be accepted."

Appellee also cites Annotation, 140 A. L. R. 530: "It seems to be universally recognized as a general rule that, everything else being equal, affirmative testimony is stronger than negative. 20 Am Jur 1037, Evidence, § 1186; 1 Jones, Evidence, 2d ed § 20. And some courts have even gone to the length of holding that, as against positive evidence, negative testimony is insufficient to create a conflict of evidence sufficient to take the case to the jury or to support a verdict."

It is said in 32 C. J. S., Evidence, § 1037, p. 1084: "Other things, such as opportunity to observe and the credibility of witnesses, being equal, greater weight and probative value should be given to positive and affirmative evidence than to negative evidence; in other words, the testimony of a witness who testifies positively that a certain fact existed, or an event occurred, is, generally speaking, entitled to more weight than the evidence of another witness who swears that the event did not occur, or that he did not observe its occurrence, * * *." Under this rule the case of De Griselles v. Gans, *supra*, and Nanfito v. Chicago, B. & Q. R. R. Co., *supra,* are cited.

Contra to the appellee's contention of the issue being discussed, the appellant cites the following: The question whether negative evidence is sufficient to take the case to the jury is, of course, a question to be decided according to all the circumstances of the case. No absolute rule can be laid down in regard thereto, and different results will necessarily be reached, as the facts of each case differ. See, Annotation, 98 A. L. R. 167; Hook v. Payne, 109 Neb. 252, 190 N. W. 581.

In addition, to sustain his contention that the evidence in this case was sufficient to submit the question to the jury on this issue, the appellant cites McGill v. Baumgart, 233 Wis. 86, 288 N. W. 799; Grasser v. Anderson, 224 Wis. 654, 273 N. W. 63; Nold v. Higgins Lumber Co., 276 Pa. 195, 119 A. 919; Silfies v. American Stores Co., 357 Pa. 176, 53 A. 2d 610; Wilburn v. Simons, 302 Ky. 752, 196 S. W. 2d 356. It would serve no useful purpose and unnecessarily lengthen this opinion to distinguish the cases cited by the appellant and the appellee. They are, in a great many respects, different from the facts in the case at bar, and the facts in the case at bar are the facts that must be considered to determine whether or not this issue should be submitted to the jury.

In the case at bar, the appellant was looking and watching the highway ahead. He would be in a position to observe a signal prior to the time that the appellee

made his turn to the left. He testified he did not see the signal. Taking into account the condition of darkness which prevailed at the. time of the accident, there are reasons why the signal might have been obscured from the appellant's view either by the headlights of appellee's car or some other cause. In this connection, all of the facts surrounding the sufficiency of the signal, as to whether or not it was in accordance with the ordinances of the city of Omaha and the law of this state should be considered. The trial court must have examined all of the circumstances and facts applying to this issue and concluded it should be submitted to the jury. We conclude the trial court did not commit error in this respect.

The appellee contends that the trial court, in submitting the issue of contributory negligence, placed upon the appellee a greater duty and responsibility than our holdings justify.

In instruction No. 3, the trial court informed the jury that: "* * * The defendant further says that the collision was in no wise the result of any negligence on his part but was the direct and proximate result of negligence of the plaintiff himself, which negligence was more than slight and was as follows: * * * 3. In plaintiff's failing to avoid a collision between his car and the car driven by the defendant."

This court has on numerous occasions held: "It is the duty of the trial court, without request, to submit to and properly instruct the jury upon all the material issues presented by the pleading sand the evidence. This rule applies to the affirmative defense of contributory negligence." Krepcik v. Interstate Transit Lines, 154 Neb. 671, 48 N. W. 2d 839. See, also, Johnson v. Griepenstroh, 150 Neb. 126, 33 N. W. 2d 549.

The appellee asserts that by the giving of the above instruction the jury was free to find the appellee guilty of contributory. negligence merely because he failed to

avoid a collision, and therefore it was prejudicially erroneous.

There is no presumption or inference as to the negligence of a driver of an automobile arising from the mere fact that it collided with another vehicle. See, 5 Am. Jur., Automobiles, § 606, p. 838; Bloom v. Bailey, 292 Pa. 348, 141 A. 150, 57 A. L. R. 585.

The appellee cites Adams v. Welliver, 155 Neb. 331, 51 N. W. 2d 739, to the following effect: A driver should have his car under such reasonable control as will enable him to avoid a collision with other vehicles or pedestrians, assuming that the drivers of other vehicles and pedestrians exercise due care. Reasonable control by drivers of motor vehicles is such as will enable them to avoid a collision with other vehicles operated without negligence in the streets or intersections, and with pedestrians in the exercise of due care; but complete control such as will only prevent a collision by anticipation of negligence or illegal disregard of traffic regulations, in the absence of notice, warning, or knowledge, is not required. See, also, Ficke v. Gibson, 153 Neb. 478, 45 N. W. 2d 436; Spomer v. Allied Electric & Fixture Co., 120 Neb. 399, 232 N. W. 767; Thrapp v. Meyers, 114 Neb. 689, 209 N. W. 238, 47 A. L. R. 585; Patterson v. Kerr, 127 Neb. 73, 85, 254 N. W. 704; De Griselles v. Gans, *supra.*

The appellee further contends that in view of the foregoing authorities, the court should have informed the jury that the appellee did not have an absolute duty to avoid a collision under all circumstances; that the appellee was not required to have such complete control of his automobile as could prevent a collision by anticipation of negligence or illegal disregard of traffic regulations; and that the instruction on this issue, under the circumstances and in view of the rule as announced in the foregoing authorities, placed too great a duty upon the appellee.

In Ficke v. Gibson, *supra,* the trial court, by instruc-

tion No. 1, advised the jury as follows: "Plaintiff (appellee here) * * * alleges that the defendant, Sam Staten (appellant here), was negligent in his operation of a truck in the following particulars: * * * 3. By failing to have said truck under control so that he could stop the same before colliding with the plaintiff." In the case at bar the trial court advised the jury that the defendant (appellant here) "says that the collision was in no wise the result of any negligence on his part but was the direct and proximate result of negligence of the plaintiff himself, which negligence was more than slight and was as follows * * * 3. In plaintiff's failing to avoid a collision between his car and the car driven by the defendant." For all practical purposes, the parts of the two instructions above mentioned are substantially identical.

Complete control of an automobile is not required by the laws of Nebraska, as stated in the instruction. In the absence of an instruction which states the correct rule, too great a duty or responsibility is placed upon the appellee in the instant case. The trial court committed prejudicial error as contended for by the appellee.

For the reasons given in this opinion, the judgment of the trial court in granting a new trial should be and is hereby affirmed.

AFFIRMED.