HENRY B. PEITZMIEIER, APPELLEE, v. COLFAX COUNTY, APPELLANT.

FILED DECEMBER 4, 1913. No. 17,402.

1. **Counties: BRIDGES: CONSTRUCTION AND MAINTENANCE.** In this state, counties, in the construction and maintenance of bridges, are bound to provide for such uses as may fairly be anticipated for the proper accommodation of the public at large in the various occupations which, from time to time, may be pursued in the locality where the bridge is situated.

2. **Evidence examined, and** *held* **sufficient to support the verdict.**

APPEAL from the district court for Colfax county:
GEORGE H. THOMAS, JUDGE. *Affirmed.*

*W. I. Allen* and *B. F. Farwell,* for appellant.

*A. E. Garten* and *George W. Wertz, contra.*

LETTON, J.

The plaintiff, a resident of Colfax county, was the owner
of a steam threshing outfit. He attempted to cross a
bridge in that county with the engine and separator, when
the bridge gave way, and the machinery, with the plaintiff
and others, were precipitated into the creek, breaking the
plaintiff's leg and otherwise injuring him severely, prac-
tically destroying the separator and damaging the engine.
The petition alleges that the bridge was defective in con-
struction and dangerous to public travel; that the iron
work was insufficiently fastened to the piers; that the
bridge, in a number of particulars set forth, was improp-
erly constructed, and that plaintiff was without notice of
such defects. The answer was a general denial, with a
plea of contributory negligence. Judgment for plaintiff
for $3,000, from which the county appeals.

The testimony of an experienced bridge engineer on be-
half of plaintiff was to the effect that the bridge was de-
fectively constructed; that a number of the bolt holes in
the knee braces in which bolts should have been placed in
order to make a firm and substantial structure had no
bolts in them at the time he examined the bridge, and the
condition of the paint in the steel work showed there
never had been bolts in these holes; that the trusses under
the bridge were not properly fastened to the piers; that
one of the piers was considerably out of plumb; that the
bridge was improperly braced and not held rigidly in
place; that, on account of such defective construction,
when weight came upon this bridge it would have a tend-
ency to buckle and give way. Plaintiff testified that he
and his men laid plank upon the flooring of the bridge for

the engine and separator to cross upon; that just after the engine had gone upon the bridge they stopped, at that time the separator then being upon the approach. The object in stopping was that the two planks over which the engine had moved could be removed and placed ahead in order to complete the planking across the span; that the engineer then moved the engine ahead slowly about six feet, when the bridge swung to the west, buckled, and gave way; that plaintiff fell into the water partly under the engine breaking his leg at the ankle. This testimony was corroborated by a number of other witnesses who were there present. They also corroborated the testimony with respect to the insufficient fastening of the bridge to the piers, and as to one pier being from 16 to 18 inches out of plumb. Another witness testified he had crossed this bridge in June of the same year with a load of sand, and that the bridge trembled and shook so under the load that he became frightened; that his four horses, wagon and load, all taken together, weighed nearly $6\frac{1}{2}$ tons. Plaintiff's evidence also shows that the engine weighed about 11 tons without water and coal; that at the time of the accident he had one barrel of water and one-half ton of coal in the tender; that the separator weighed about 5 tons; that, when the engine started just before it fell, the separator stood on the approach still coupled to the engine.

On behalf of defendant it was shown by a number of owners of threshing machines that their general custom in crossing bridges is to uncouple the engine from the separator, cross the bridge with the engine, then fasten a cable to the separator and draw it across separately; that if the flooring of the bridge is good and sound it is unnecessary to plank the bridges. But on cross-examination it developed that several of these witnesses had never crossed a steel bridge with their machinery. The county surveyor testified that he examined three of the knee braces to the bridge the day after the accident and found all the bolt holes properly filled with bolts. On cross-

examination this testimony was weakened by the fact that upon being shown exhibit "K," afterwards identified as one of the knee braces taken from the bridge, he admitted that the bolt hole seemed to be filled with red paint of the same color and character as applied to the outside of the steel, thus bearing out the testimony of plaintiff's witnesses that a number of the bolt holes were filled with paint. The foreman of the work on the bridge and several other witnesses testified that bolts were put into all the places required, and described the method of fastening the bridge to the piers. The foreman of the work further testified that the bridge was erected in all respects in a proper manner. One of the county commissioners testified that soon after the erection of the bridge he examined it and found all bolts in place; that on the day of the accident he pulled out three of the anchor bolts from the piers, and he produced them in court. Another member of the county board also testified to examining the bridge at the time of its completion. An experienced bridge engineer testified that the knee braces were properly constructed, and that the method of placing the anchor bolts was that approved by competent engineers. It was also shown that the weight of the entire machinery of the plaintiff was about 35,000 pounds; that the engine weighed about 23,600 pounds without water or fuel, and the separator about 11,000 or 11,500 pounds. On cross-examination it was shown that there were three or four 20-horse power Reeves engines of the same type in Colfax county.

On rebuttal it was shown that there were seven 20-horse power engines in Colfax county at that time, and some larger ones, and four separators of about the same size as plaintiff's. Plaintiff also testified that the usual method of moving threshing machinery is to pull it across if the bridge is safe, but if unsafe to cable across. The testimony is voluminous, but the essential features are as related.

Four points are argued in the brief of the appellant. The first two are that the verdict is not sustained by suffi-

cient evidence, and is against the clear weight of the evidence. There was a direct conflict in the testimony as to nearly all the material points. The jury evidently believed that the bridge was defective, and that the plaintiff was not guilty of contributory negligence, and we think the evidence is sufficient to justify such conclusions.

The third assignment is that the verdict is contrary to law. Under this assignment the plaintiff has quoted at length from the note to *Kovarik v. Saline County,* in 27 L. R. A. n. s. 832 (86 Neb. 440) to establish the principle that "municipalities, in the construction and maintenance of bridges, are bound to provide for such uses as may fairly be anticipated for the proper accommodation of the public at large in the various occupations which, from time to time, may be pursued in the locality where the bridges are situated, but that they are not bound to provide for the support of unusual and extraordinary loads." And, further: "But where the use of the highways by such machines (heavy traction engines) in the locality is unusual and extraordinary, the bridges need not be constructed and maintained in a condition to carry them, and the municipalities cannot be held liable for damages resulting from their insufficiency."

The trial court, at defendant's request, instructed the jury, as follows: "The jury are instructed that, in an action against a county to recover damages alleged to have been caused by the breaking down of a bridge while the plaintiff was attempting to cross it with a steam traction engine and separator, it is for the jury to determine, from the evidence, whether or not the bridge was properly constructed and maintained, and whether the use the plaintiff was making of it was unusual and extraordinary, and such as the county was not bound to anticipate.

"The jury are instructed that, in maintaining a bridge for public use, the county is not limited in its duty by the ordinary business use of the structure, nor is it bound to provide for the support of extraordinary or unusually

heavy loads, but it is only bound to provide what may be fairly anticipated for the proper accommodation of the public at large in the various occupations which from time to time may be pursued in the locality where the bridge is situated. Whether or not the load which plaintiff drove on the bridge in question was an extraordinary or unusually heavy load is a question for you to determine from the evidence before you. * * *

"The jury are instructed that a county cannot be held as an insurer of those who have occasion to use a county bridge. If the defect in a bridge from which injury and damages occur to the person using it is a latent defect, not discernible from the ordinary tests and examinations usually made to ascertain its condition, and if those charged with such examinations have not been negligent in their duty in that regard, the county cannot be held liable for damages caused by such latent or undiscovered defects.

"The jury are instructed that, if they find that the use the plaintiff was making of the bridge was unusual and extraordinary and such as the county was not bound to anticipate, then the jury should find for the defendant."

These instructions seem to lay down the law in accordance with defendant's contention and with our views as expressed in *Seyfer v. Otoe County*, 66 Neb. 566, *Johnson County v. Carmen*, 71 Neb. 682, and *Kovarik v. Saline County*, 86 Neb. 440.

The bridge was built in the latter part of 1909. The accident occurred early in August, 1910. It had been safely crossed a number of times by 16-horse power engines, with separators weighing nearly as much as that belonging to plaintiff. The use of 16-horse power engines with large separators was common in Colfax county. A number of other engines and separators of larger size were also used therein. The bridge should have been made in the first place at least of ample strength to carry 16-horse power threshing machinery. The evidence shows that the difference in weight between 16-horse power en-

gines and 20-horse power engines of the same make is only 2 or 2½ tons. If but a small margin of safety had existed in the bridge over the strength absolutely required to carry ordinary threshing outfits, it would have been amply strong enough to carry the additional weight. The whole matter· was left to a jury of the county, who were no doubt better fitted to judge of the sufficiency of the bridge to carry the loads reasonably to be expected in that locality than is this court.

Complaint is made of the reception in evidence of some of the knee braces taken from the bridge as incompetent, irrelevant and immaterial. The pieces were taken from the bridge the night before by unscrewing bolts which attached them thereto. This was nearly nine months after the accident. The evidence was not subject to the objection urged. Its weight and probative value may have been impaired by the long delay considering the chance of fabrication, but this, which is the ground argued here for exclusion, was for the jury. The objection to the question whether the contractor was under bond to the county should have been sustained, but the answer was so uncertain and indefinite we think the ruling without harm.

The case seems to have been fairly and impartially tried. The judgment is moderate in amount as compared with the injuries and damages proved. We find no prejudicial error, and the judgment of the district court is

AFFIRMED.

BARNES, ROSE and SEDGWICK, JJ., not sitting.