WILLIAM O. LYONS, ADMINISTRATOR, APPELLANT, V. GREELEY COUNTY, APPELLEE.

FILED JANUARY 30, 1914. No. 17,515.

1. **Appeal: AFFIRMANCE.** Where there is no conflict in the evidence as to the principal facts in a case, but the conclusion as to how the decedent lost his life must be drawn from inference and conjecture, the circumstances shedding little, if any, light upon the cause of the loss of life, the verdict of the jury for defendant cannot be set aside.

2. **Counties: ACTION FOR DEATH: INSTRUCTIONS.** Instructions given to the jury by the trial court examined, and found not prejudicially erroneous.

APPEAL from the district court for Greeley county: JAMES R. HANNA, JUDGE. *Affirmed.*

*H. C. Vail,* for appellant.

*J. P. Boler* and *J. R. Swain, contra.*

REESE, C. J.

This is an appeal from a judgment rendered by the district court for Greeley county. Plaintiff sued as the administrator of the estate of his father, Samuel W. Lyons, deceased, alleging that decedent lost his life by reason of a defective bridge across Freeman creek in the county of Greeley, defendant. The defect complained of is that the

side railing of the bridge was defective, rotten, decayed, and not in a safe condition, and that by reason thereof the decedent was precipitated into the water below and lost his life. Some objections are made to the averments of the petition, which are not deemed necessary to notice. There was a jury trial, resulting in a verdict and judgment in favor of defendant. Plaintiff appeals.

The facts shown as to the cause of the death of Samuel W. Lyons are very meager. It appears that on the morning of the day of his decease he took a horse and buggy and drove to Freeman creek, stopping at or near where the creek is spanned by a bridge. Evidently he unhitched his horse and left his buggy near the end of the bridge. The purpose of his trip was to engage in fishing in the creek. During the forenoon his horse, by some means, escaped, and he went to a near-by neighbor's house and telephoned for his son, the plaintiff, to come for him, as his horse had escaped. This was perhaps not far from ten o'clock in the forenoon, and was the last that was seen of him alive. When his son arrived, which was before noon, he found the buggy all packed ready for the return home, but the horse was gone. An examination disclosed decedent's hat in or near the water, and one length of the side railings of the bridge gone from its place and floating in the water some little distance below the bridge. His fish bait and some few fish were found upon the floor of the bridge, and his fishing rod was lying on the floor; the end to which the line was fastened projecting over the opposite side of the bridge with the baited hook in the water. The floor of the bridge was about seven feet above the surface of the water, which at that point was seven to eight feet deep. After an extended search the body was found under the side of the bridge and immediately under the place of the missing side rail. There is some doubt as to whether decedent met his death from drowning or from injuries found upon his head. If the latter, it might be inferred that in falling his head struck some of the bridge timbers just beneath, producing unconsciousness, or, practically, death. The testimony of the

physician indicates that certain signs of death by drown-
ing alone were absent. There is no proof that death was
caused by heart failure or from any other natural cause.
While decedent was about 69 years of age, he was shown
to be a healthy, robust man for one of his age, and it is
argued that death was not from any natural cause. It is
shown that the bridge was of considerable length, and that
the span of railing, which was broken, or had fallen away,
was inadequately fastened, and the post under its center
had rotted away at the point where the side railing should
have been fastened to it, to such an extent that nails or
spikes could not hold it, and it was kept in place by being
sprung so that at its center it bore against one side of the
center post and at its ends against the other sides of the
end posts, being thus held in place by its cramped condi-
tion. Whether it was knocked or pushed off by decedent
is unknown. He may or may not have been leaning or
resting against it when it gave way, thus precipitating
him into the water, or it may have been off, when, not no-
ticing the fact, he walked off the bridge, with the results
stated. No one can tell, as no other person seems to have
been there or to have seen how the accident occurred. The
mind is left entirely in doubt and conjecture as to what
may have been its immediate cause. Plaintiff seems to
have furnished all available evidence possible as bearing
on the question, but was unable to show the exact facts.
That the death was a sad one is unquestioned, but whether
it was caused by the failure of the county to discharge
any duty in connection with the bridge was a question
of fact, which was submitted to the jury, and they arrived
at the conclusion that plaintiff had failed or was unable
to make out his case, and they so decided. We cannot see
our way to set aside their verdict on these questions of
fact.

Objection is made to some of the instructions given by
the court to the jury. These will be briefly noticed. The
seventh instruction contained a definition of contributory
negligence. This part appears to be a correct statement
of the law and is not assailed. Following this is the di-

rection that, even though the jury might find that the defendant was guilty of negligence, still if they found that plaintiff's intestate did not exercise that ordinary care and diligence to prevent injury that would be expected of an ordinarily prudent person of his age, experience and opportunities situated as he was, and that injury complained of resulted by virtue of such contributory negligence and was the proximate cause thereof, they should find for the defendant. The criticism of the instruction is that there was no proof of such contributory negligence, and that it was error to give an instruction upon the subject. Ordinarily the contention may be said to be correct, but, as we have seen, there is no direct evidence as to how decedent came to his death. The question is largely one of inference and speculation. The answer alleged contributory negligence. There being an absence of evidence on that part of the case, the defense could contend that the death resulted from a want of care on the part of the decedent, as being within the issues, and inferable from the facts shown. We cannot see that, under the issues and such facts as were shown, there was any prejudice to plaintiff resulting from the instruction, nor, indeed, that it was improperly given.

Objection is made to the fifteenth instruction given. Without setting out the instruction here, it must be sufficient to say that it is an exact copy of the third clause of the syllabus in *Johnson County v. Carmen*, 71 Neb. 682, which we think correctly states the law. The evidence upon the subject of the want of care of the county officials was, to some extent, at least, conflicting, and we cannot see that it was error to give the instruction.

The judgment of the district court will have to be affirmed, which is done.

AFFIRMED.

LETTON, FAWCETT and HAMER, JJ., not sitting.