ESTELLA B. FRICKEL, APPELLEE, v. LANCASTER COUNTY
ET AL., APPELLANTS.

FILED APRIL 26, 1927. No. 24804.

1. **Counties: HIGHWAYS: OBSTRUCTIONS: LIABILITY.** A county cannot evade statutory liability for damages arising out of an obstruction in a highway by a plea that the repair of such highway at the point where the injury occurred has been delegated to another.

2. ———: ———: **CONSTRUCTION: CARE REQUIRED.** A county cannot be held to be an insurer of those who have occasion to use a county highway in process of repair. It is required to use such care as, under the circumstances, is reasonable and ordinary in its inspection of the highway and in the execution of such repairs as it finds necessary or undertakes to make. It is required to use reasonable and ordinary care to maintain the highways reasonably safe for the traveler using them while in the exercise of reasonable and ordinary care.

Frickel v. Lancaster County.

3. Negligence: Proof. Where one injured in an accident was operated on for appendicitis about two months later and the only evidence that the injury was the proximate cause of the appendicitis was to the effect that there was a chance or a possibility that the accident caused the condition, all evidence relating to the appendicitis should be withdrawn from the consideration of the jury. Ultimate facts cannot be determined from mere conjecture.

4. ————: ————. Evidence of subsequent repairs made or precaution taken after an accident or the infliction of an injury is not admissible to prove antecedent negligence.

Appeal from the district court for Lancaster county: Jefferson H. Broady, Judge. Reversed.

Elmer E. Ross, Dressler & Neely, Lester L. Dunn, Charles E. Matson, Max G. Towle and Farley Young, for appellants.

O. B. Clark, contra.

Heard before Goss, C. J., Rose, Dean, Day, Good, Thompson and Eberly, JJ.

Goss, C. J.

Plaintiff had a verdict and judgment against Lancaster county and Central Contractors for $12,000 for personal injuries. Both defendants appealed.

On July 26, 1924, the county was constructing a state and federal-aid road on the state highway west of Lincoln between Emerald and the west county line. Central Contractors, a copartnership, was doing the work under a written contract in which the county and the state by its department of public works were the parties of the first part and the contractors were the parties of the second part. The evidence shows that the grading had been completed, at least at the place involved here, and the contractors were hauling and depositing the gravel in piles, as dumped by trucks, on the north side, or shoulder, of the graded portion in the usual manner ready to be spread mechanically over the rest of the grade. They had first begun at the east end of the project, and had dumped gravel on the grade

from the end of pavement to the railroad viaduct. Then they began at the west end on the Seward county line and were dumping the gravel eastward to meet the point where they had left off on the eastern section. There was thus a gap of a mile or more between the west end of gravel at the viaduct and the east end of gravel on the part of the project where the accident occurred. On the roadway at this point there was left ample space for vehicles proceeding with ordinary care to meet and pass going east and west. Before daylight on the morning of the day named, the plaintiff, aged 21, and her husband, aged 22, having a vacation of two weeks, started from Lincoln by motorcycle on a trip to a point 207 miles distant in Kansas to visit relatives. They left Lincoln on West O street. Plaintiff was in a side-car at the right of the motorcycle and her husband was operating the vehicle. When they had gone about nine miles, the car ran into the piles of gravel and overturned. In some way plaintiff's hand was caught and injured and later two of her fingers were amputated. There was evidence that she was in a comparatively early stage of pregnancy and suffered a miscarriage the next night after the accident. Evidence was admitted showing that eight weeks later she was operated on for appendicitis.

Numerous errors are assigned and argued by the county and by the contractors separately, many of them applicable alike to both defendants, but we do not find it desirable nor necessary to list them all. They have to do chiefly with instructions to the jury, and refusal to give instructions requested, and with alleged error in the admission of evidence.

The county complains because the court overruled its demurrer and because it refused both at the end of plaintiff's evidence and at the end of all the evidence to instruct the jury to return a directed verdict in its favor. Section 2746, Comp. St. 1922, makes a county liable for any special damages happening to any person by means of insufficiency or want of repairs of a highway which the county is liable to keep in repair. Under section 8336 (the state highway

act) the county was required to maintain the road adequately, and under section 8342 it had authority to close temporarily to traffic any portion of the highway and give notice to the public by placing at the roadside signs stating that the road is closed to travel by order of the county board. The county is bound to use reasonable and ordinary care in maintaining and in repairing its highways. Its duty will not be extended by construction beyond the words and fair implications of this statutory liability. However, the county contends that, since it entrusted the work of grading and graveling to skilled and experienced contractors selected with reasonable care and judgment, the county is not liable for the negligent acts of the contractors in failing to keep the road sufficiently in repair or to maintain sufficient barriers or warnings to protect those allowed to use the highway while the work is going on. In *Sharp v. Chicago, B. & Q. R. Co.*, 110 Neb. 34, this court, in a discussion and application of section 2746, held that a county cannot evade statutory liability for damages by the plea that the repair and upkeep of the highway had been delegated to another. The same principle was involved in *Saltzgaber v. Morrill County*, 111 Neb. 392, and in *King v. Douglas County*, 114 Neb. 477, and was decided adversely to the respective counties involved. We find nothing in the facts here to warrant a departure from the rule announced in those cases.

The defendant contractors also insist that they are exonerated from liability because the county had assumed, by arrangement between the defendants, the responsibility of spreading the gravel and that the duty of the contractors ended when the gravel was deposited. The written proposal which ripened into the written contract and by the latter was expressly referred to and made a part of the contract was for "56,300 square yards gravel surfacing, in place, 3 inches deep, 26 cents, $14,638." The specifications which likewise were expressly made a part of the written contract contained provisions from which we excerpt: "The contractor shall provide and maintain proper guards, suitable

and efficient lights, and take all necessary precautions for
the prevention of accidents;" and "The contractor shall
assume all responsibility in the event of accidents, either
personal injuries or property damage, sustained by per-
sons or property due to the carrying on of his work." Un-
der the specifications made part of the contract, it was the
engagement between the county and state and the contract-
ors that the county should spread the gravel for the con-
tractors and be paid by the contractors for that work the
sum of one and a half cents per square yard. In this speci-
fication the parties agreed that the contract should be con-
sidered fulfilled and final acceptance should be given by the
state within 15 days after the spreading of the gravel. So
it appears, first, that the contractors' duty did not end with
the depositing of the gravel, and, second, that as to tl
spreading of the gravel the county was acting for and
paid by the contractors.

The defendants severally offer strong arguments why
the case presented by plaintiff on the merits of the evidence
should not have been submitted to the jury. While we
might think that the general knowledge that roads in Ne-
braska are under repair in the summer-time, that the fact
that plaintiff had already on the morning in question
passed over a part of this very project, that if the lights
on the motorcycle were reflecting as the law requires and
she was not keeping a lookout as ordinary care would dic-
tate, that one driving or riding in the darkness is more
liable to meet disaster than in the daylight, and such things
might induce us if we were jurors not to have found for
plaintiff, yet that was the province of the trial jury, as
selected, and we cannot say that they should have been di-
rected to return a verdict for the defendants or for either
of them.

The defendants allege error as to several of the instruc-
tions given by the court, and because of the refusal to give
instructions requested. The most serious complaint refers
to the fifth instruction given by the court on its own mo-

Frickel v. Lancaster County.

tion, wherein the court charged the jury: "That it was
the duty of Lancaster county to keep the highways within
the county in repair, fit and safe for the plaintiff to travel
along as a passenger in the side-car occupied by her, and
if you find that the county failed so to keep the road in re-
pair, and that the plaintiff, while exercising ordinary care,
was damaged by reason of such failure of the county, you
will find for the plaintiff." The county is a municipal unit
and a governmental subdivision of the state. It is purely
a creation of the legislature. It has no powers and it is
charged with no duties save as those powers are granted to
it, and as those duties are laid upon it, by the legislature.
It was made possible for plaintiff to bring this action only
by virtue of section 2746, heretofore referred to. The in-
struction made the county an insurer of the fitness and
safety of the road, and rendered it liable to any special
damages the plaintiff suffered while riding on the road,
provided she exercised ordinary care. The county cannot
be held to be an insurer. *Johnson County v. Carmen,* 71
Neb. 682; *Peitzmieier v. Colfax County,* 94 Neb. 675; *Lyons
v. Greeley County,* 95 Neb. 104. While the act makes the
county liable for the maintenance and repairs of a highway,
it does not impose any new rules of evidence or of law,
making its requirements as to the care or the manner of
doing it any different in quality than imposed on those who
use it; in other words, a county is required to use such
care as, under the circumstances, is reasonable and ordi-
nary in its inspection of the highway and in the execution
of such repairs as it finds necessary or undertakes to make.
It is required to use reasonable and ordinary care to main-
tain the highways reasonably safe for the traveler using
them while in the exercise of reasonable and ordinary care.
Even if we felt at liberty to say that the contrast in this
instruction as to the care required of the respective parties
could be helped out and cured by other instructions to the
jury, yet a search through the entire charge to the jury
is fruitless of any definition of any sort of care required

of defendants.. It follows that the court erred when it imposed on the county the duty to keep the highway fit and safe, whereas in contrast with that and in the same instruction it imposed on the plaintiff the lesser duty of ordinary care.

We might stop here, but there are other things in the case, a discussion of which may be helpful if the case be retried. In her amended petition the plaintiff set forth at length and with considerable particularity, as well as in general terms, her injuries, but did not name appendicitis as one of them. In the statement of the pleadings to the jury the court did not mention either appendicitis or the other injuries specifically, but grouped them in the general statement, "and says that she received serious and permanent injuries for which she seeks recovery against the defendants." On the trial, evidence as to the appendicitis was received and it was sought to connect it with the accident, either directly as the proximate cause eight weeks before the operation, or indirectly through the miscarriage which occurred the next night after the accident. The doctor who amputated plaintiff's fingers, and who operated for appendicitis, testified from his observance of the case and from his experience; and another doctor, called as an expert, testified in answer to hypothetical questions. Both were cross-examined. Neither was able to express a steadfast opinion that the appendicitis was caused either by the trauma or by the miscarriage. The first doctor, at one point, stated: "Whether the appendicitis naturally followed the injury, or didn't, I couldn't state. I say that it could have caused it and no question but what it contributed to it, but whether it caused it I couldn't say." That is the only expression of anything approaching positive opinion in the testimony of either doctor that either the accident or the miscarriage caused the appendicitis. The evidence of both is sprinkled with answers, as to whether the accident caused the appendicitis, to the effect that there was "just a possibility," that it was "possible," that "there is a chance,"

that "the inflammation of the appendix might have been the sequel to the injury." The ultimate fact and the ultimate opinion were thus left as pure matters of conjecture. In this state of the evidence the court was requested and refused to give the jury a tendered instruction to the effect that the evidence was insufficient to show that the appendicitis was proximately caused by the accident and that the jury should not allow anything on account of appendicitis. So the jury were left to consider this element and to fix the damages for appendicitis along with the other "bodily injuries to the plaintiff, together with physical and mental pain and suffering," as the jury were charged in the instructions on the measure of damages. We are of the opinion that there was no sufficient evidence connecting the accident as a proximate cause with the appendicitis, that it should not have been left to the jury on evidence of chance, possibility, or conjecture, and that the failure to withdraw it was prejudicial error.

On the trial the court permitted a witness, over objection, to testify that, on Sunday evening after the accident, which happened on Saturday morning, she saw a road patrolman place a red lantern at the end of the dumped gravel. This testimony should not have been admitted. Evidence of subsequent repairs made or precaution taken after an accident or the infliction of an injury is not admissible to prove antecedent negligence. *Pribbeno v. Chicago, B. & Q. R. Co.*, 81 Neb. 657 (citing cases); *Tankersley v. Lincoln Traction Co.*, 101 Neb. 578.

Considerable space in the briefs is devoted to the charge that plaintiff's counsel went beyond proper limits in bringing before the jury the supposed relations of defendants with an indemnifying insurance company. We find on examination that as to much of the conduct complained of the defendants have either waived their objections in certain matters or have not properly protected themselves so as to take advantage of the error claimed. But several instances remain where they have saved exceptions which,

under the rules of evidence obtaining in most jurisdictions, would have been available to the defendants here. Since this case was tried, but before the writer came to this bench, our court, by a majority, with three judges dissenting, announced as a rule of practice for all courts in this jurisdiction the following, as shown in the syllabus of *Jessup v. Davis, ante,* p. 1:

" 'Where a plaintiff in a personal injury action seeks by appropriate interrogatories on the cross-examination to discover whether the defendant is indemnified from loss by an insurance company, it is error for the court to sustain an objection to interrogatories which tend to develop the fact on that question.' *Miller v. Central Taxi Co.,* 110 Neb. 306, reaffirmed and promulgated as a rule of practice."

That rule is of course binding on us in review of the instant case; but there is no purpose on the part of the court to extend the rule in any respect beyond its literal meaning and beyond the proper implications to be drawn from its words. It does not give license to parties, attorneys, or witnesses, in the trial of a cause, to go beyond the limits of good faith and that spirit of fair and honest inquiry which is so often glorified as one of our national heritages; and it is the office of the trial judges to see that, as long as this rule remains in force, these principles are practiced. We will not say that the conduct of this case in respect of the insurance, duly preserved and here for review, was such as to violate the above rule, but there was some not so preserved that was dangerously near, if not over, the edge of error.

For the reasons given, the judgment of the trial court is reversed and the cause remanded for a new trial.

REVERSED.

ROSE, J., concurring in part.

I concur in the reversal on account of the errors pointed out in the opinion, but I do not think the failure to give warning of the gap between the two lines of gravel on the

roadside or the failure to put lights or guards at the ends of the gap was evidence of actionable negligence. At the place of the accident the highway was in a safe condition for travel. There was plenty of room to pass. The gravel at the end of the gap was no more dangerous than a bank of the same height at any bend in a road, a condition with which all travelers on public highways generally are familiar. Plaintiff and her. husband passed a similar line of gravel without mishap. They knew that the road was being surfaced with gravel, that gravel was placed on the roadside for that purpose, and that time for surfacing was required. Knowing that the road was being improved, there was no right to assume that the improvement and work ended at the end of a line of gravel or at the gap. I am of the opinion there was no evidence of actionable negligence on the part of defendants.