LUCILE BOOMER, APPELLANT, V. LANCASTER COUNTY, APPELLEE.

FILED APRIL 6, 1928. No. 26083.

Clinton J. Campbell, Harry R. Ankeny, Don D. Elliott and Verda Vallier, for appellant.

Charles E. Matson, Max G. Towle and Farley Young, contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and HOWELL, JJ., and REDICK, District Judge.

GOSS, C. J.

This is an appeal by plaintiff from a judgment on a verdict of the jury against her. She sued the county for damages for personal injuries received while riding in an automobile upon the public highway, claiming that her injuries were proximately caused by the unsafe condition of the highway. This is the second time the cause has been before this court. In the former trial, the court sustained the motion of the defendant at the end of plaintiff's evidence and directed a verdict for the county. On review the judgment was reversed. *Boomer v. Lancaster County*, 115 Neb. 295. On this trial the evidence of both sides was presented to the jury, the court overruled the motions of the defendant to direct a verdict in its favor at the conclusion of the testimony for the plaintiff and again at the conclusion of all the testimony, the case was submitted to the jury and it returned a verdict for the county.

The reader is referred to the former opinion for the general layout of the case, though the details are somewhat different here. While plaintiff's brief says that the evidence on her behalf is substantially the same on the second trial, we find that the evidence now leaves us with quite a different impression of the facts than we had when we reviewed the first trial. The evidence on behalf of the plaintiff shows that, in the middle of the roadway at the end of the pavement south of the penitentiary, there stood a large post in front of which, as shown in the picture

offered by plaintiff, was a sign on another post indicating "Closed road" and some other words not readable in the photograph. Leaning off to the east from these obstructions was a plank barricading several feet east of the center of the road. Plaintiff saw this and testified that when the party reached that point there was a conversation between Walter Larson, who was then driving, and Donald Robb about the road being closed south of that point, and that Donald said in substance that the road had been closed but he thought they could get through now. It seems that Donald had driven to the end of the pavement a few weeks earlier, had found the sign there and two planks barricading both tracks and so had turned around there. Not long after driving past this point the car was stopped and Larson and plaintiff, who were in the front seat, exchanged seats with Donald Robb, and another of the girls and Donald Robb drove the car from that time until the accident occurred. The culvert where the plaintiff was injured is about two and one-half miles south of the penitentiary. The culvert was undergoing repair. The county had excavated a considerable portion of the east part of the roadway occupied by the culvert but had left a passageway for traffic between the dirt excavated and the north end or banister of the culvert. On account of the fresh dirt and the size of the pile thereof, the passageway was not so level nor so smooth as is ordinarily the case in a highway, but the pictures of it taken the next day do not show that there would be any difficulty in driving through it in the exercise of ordinary care. A driver of a bus who testified in the case said the Beatrice busses drove through there four times daily. These busses require a clearance of 18 inches in excess of the ordinary touring car.

Donald Robb testified he was driving 30 to 35 miles per hour, that he did not see any red light or the pile of dirt and did not see the dirt until within two or three car lengths of it. He then swerved the car toward the opening, but the car struck the west banister, tore off the rear

door and the right rear of the car, threw the plaintiff over the banister into the mud and water and turned part way around a little south of the culvert. Five of the six members of the party testified on the trial. None of them saw any signs other than the one referred to as at the end of the pavement and none of them saw the red lantern on the dirt pile at the culvert until after the accident. The fact that they did not see the signs nor the red light does not prove that the signs and lights were not visible.

That there was a red lantern at the west side of the dirt pile to mark it, and the open passageway between it and the west end or banister of the culvert is established so well by the evidence that a jury could not find otherwise and be within the truth. Indeed, it was so established by the witness, E. D. Stewart, who testified on behalf of plaintiff. He lived about 150 yards north of the culvert on the west side of the road and was the first one to arrive there after the injury to plaintiff. He testified that he saw the red lantern there that night, that it was burning, and that it could have been seen by those approaching from the north for a distance of 250 to 300 yards. This red light was on a stick at the west side of the bank. This witness testified that a picture taken the next morning did not show the lantern extending quite so far out over the east track as the lantern ordinarily did. The picture shows the lantern plainly visible from the north where the camera was located. Mr. Stewart testified to the sign at the south end of the pavement; he testified that there was another sign "right on the shoulder of the road at McNeil's place about half a mile north of the culvert where the accident was, with the words on it 'Road under construction' or something to that effect."

The testimony on behalf of the county is in effect cumulative of what is indicated as the evidence of the plaintiff heretofore abstracted. The inevitable impression on the reader, as it must be upon a juror, is that the county was not negligent in the matter of having the roadway open for general travel, nor was it negligent at the culvert.

It would have been a great hardship to those living along the line and to those having business there to barricade the road against all travel during all the time of the improvement of the road. It was sufficient if such signs and warnings were given, and such passageways past the improvements were provided, so that one driving with due and ordinary care might go through without mishap. The pictures offered by the plaintiff and received in evidence and the testimony offered by plaintiff show that such signs and warnings were provided for those who would look and see, and such a red light was provided at the culvert as to call attention to special danger, and then such ample passageway was there provided as to protect fully one who was proceeding on the highway at that point with ordinary care in all the circumstances of the occasion. We said in *Frickel v. Lancaster County*, 115 Neb. 506:

"A county cannot be held to be an insurer of those who have occasion to use a county highway in process of repair. It is required to use such care as, under the circumstances, is reasonable and ordinary in its inspection of the highway and in the execution of such repairs as it finds necessary or undertakes to make. It is required to use reasonable and ordinary care to maintain the highways reasonably safe for the traveler using them while in the exercise of reasonable and ordinary care."

We are of the opinion from the evidence that the county was not at all negligent in the premises and that the proximate cause of the unfortunate and deplorable injury to the plaintiff was the want of care in driving the car in which she was riding.

So the court might well, in this trial, have sustained the motion for a verdict in its favor made by the county at the conclusion of plaintiff's evidence and renewed at the conclusion of all the evidence. This view renders it unnecessary for us to consider the many assignments of error set up and argued by the plaintiff, having to do with errors alleged to inhere in the instructions given by the court. The jury having arrived at a verdict for the defendant,

which would have been justified by direction of the court, whatever errors the court may have made in the instructions given are without prejudice to the plaintiff.

Where, under the evidence, a court should sustain a motion made by the defendant for a directed verdict in favor of defendant, but refuses so to do, and, after instructions by the court submitting the case to the jury, the jury returns a verdict in favor of the defendant, this court will not review the instructions to determine if there was error in connection therewith; such error, if any, would be without prejudice to the real rights of the plaintiff.

So the judgment of the district court is

AFFIRMED.

Note—See Highways, 2 A. L. R. 721; 13 R. C. L. 308; 3 R. C. L. Supp. 40; 4 R. C. L. Supp. 808; 5 R. C. L. Supp. 694; 29 C. J. 680 n. 63, 67.