## HOPKINS v. MILLER.

(Division B. Sept. 26, 1938.)

[183 So. 378. No. 33161.]

**J. H. Currie** and **J. C. Floyd,** both of Meridian, for appellant.

**Reily & Parker**, of Meridian, for appellee.

Argued orally by **J. H. Currie,** for appellant, and by **Marion W. Reily,** for appellee.

**Anderson, J.,** delivered the opinion of the court.

The appellee brought this action in the Circuit Court of Lauderdale County against appellant, a railroad company being managed by a trustee, to recover damages for a personal injury received by her in attempting to cross in an automobile appellant's railroad track on B street, in the city of Meridian, which crossing was in such an unsafe condition that it was impassable, the ground of negligence alleged being that appellant had failed to properly guard the traveling public against such danger. The only question in the case is whether it was error to refuse appellant's request for a directed verdict. In considering that question, all the material facts which the evidence tends to substantially establish favorable to appellee's position should be taken as true. So viewing the record, here is the case:

B Street in the city of Meridian is Highway 45 and is one of the main streets of the city. It runs east and west, and there is much travel on it both day and night, mostly, of course, by motor vehicles. Appellant's railroad track crosses B Street not at right angles, but at triangles at a point between 18th and 21st Avenues. The avenues in the city run north and south, and are numbered numerically from east to west. Appellant was engaged in repairing its track at the crossing. The old track was being dug out, the ties were being renewed, and other work necessary to restore the track so as to fit in with the street paving. The result of the work was that the crossing was impassable. It was dangerous to the lives and limbs of persons undertaking to cross it in motor vehicles. The crossing had been in this condition since the first of May, 1936. The injury to appellee took place on the next Sunday, the third of that month, about seven-thirty o'clock in the evening. She was a guest with others in an automobile being driven by Curtis Miller, a nephew of her husband. They were going east on B Street. There was no warning or barricade at or

near the crossing. In passing over the railroad track, the car was wrecked and the appellee was injured as a result thereof.

Appellant had erected and had undertaken to maintain warnings and barricades at both of the approaches to the track on B Street. According to the testimony of the witness, Wilkinson, an employee of the city of Meridian, whose duty it was to look after its streets at night, B Street was barricaded and had warning lights on it between 18th and 21st Avenues. The barricades consisted of wooden horses, about waist high, with one by ten inch planks, about twelve feet in length, laid thereon from one to the other. On each barricade, there were two red light lanterns, one on each end. The approaches on the crossing had been guarded in that manner since the repair work had begun on Friday before the injury on Sunday evening.

The witness, Rogers, who worked nearby, testified that during those three days—Friday, Saturday, and Sunday—the barricades had been knocked down three or four times by the traveling public and replaced by appellant. The blocks in that section of the city are something like three hundred feet frontage.

The barricade and lanterns east of the crossing were located a short distance west of the point where 18th Avenue enters B Street, and the barricade and lanterns west of the crossing were located a short distance east of where 21st Avenue enters B Street. In both directions, therefore, the barricade and lanterns were a considerable distance from the crossing. There was no light on or near the crossing.

The witness, Buchanan, undertook to make the crossing in his car about a half an hour before appellee's party undertook to cross. His car was wrecked—a tire blown out, and a spring broken. There were no barricades or lights on the approaches when he attempted to cross. Some traveler preceding him had knocked them down.

Something like an hour before the appellee was injured, Crews, the superintendent of the appellant, was notified that the barricades and lights were down. The evidence on behalf of appellant tended to show that they were replaced within an hour or an hour and a half.

Leaving out of view the question whether appellant used reasonable care to replace the barricades and lights, we think the question whether appellant used reasonable care to guard the traveling public against attempting the crossing was one for the jury, and we reach that conclusion from the following considerations:

The method adopted by appellant was a failure and appellant knew it. It was fully aware that it would not answer its purpose. Three or four warnings in three days were enough to induce appellant to try some other means. A red lantern on or in close proximity to the crossing in addition might have answered the purpose. Or a person with a red light standing guard at the crossing and waving the traveling public away might have accomplished the purpose still better. It was for the jury to say whether appellant, in the exercise of reasonable care, should have adopted some other method in the place of the one tried which was a manifest failure.

Affirmed.