GRAVES *et al. v.* HAMILTON *et al.*

(Division A.  Oct. 31, 1938.)

[184  So.  56.  No. 33309.]

Watkins & Eager, of Jackson, and W. D. Womack, of Belzoni, for appellant.

Murphy & Wadlington and **V. B. Montgomery,** all of Belzoni, for appellees.

Argued orally by **Pat Eager** and **Ed Brewer**, for appellant, and by **C. M. Murphy** and **V. B. Montgomery**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

This is the second appearance of this case in this court, the former judgment having been reversed for erroneous instructions, 177 So. 360,—the opinion stating that the decision was ruled by the companion case, Graves et al. v. Johnson et al., 179 Miss. 465, 176 So. 256. The facts now shown of record, so far as concerns the issue of liability, are substantially the same as outlined in the case last cited, wherefore we will not enter upon a repetition of them; but we will, to some extent, summarize the effect of the holding in that case.

The defendant road contractor had a right to place a barricade at the point where the usable portion of the road ended and the unusable portion began. It would be almost impossible to construct hard surface roads unless such a right existed and was availed of. The purpose of such a barricade is to keep travelers off the unusable portion until it shall become fully capable of being used, from which it follows that the contractor has a right to use a barricade which will accomplish the stated purpose, and fully accomplish it. The law prescribes no particular form or style or kind of barricade, although the contractor should use the standard type of barricade prescribed by the Highway Commission so long as this type is effective. But here the wooden barricade so prescribed, was often broken down or removed, and the unfinished work was as a consequence damaged. In such a case, and when a particular barricade is being used and by experience that type is found to be ineffective, another may

be adopted which is effective. Compare Hopkins, Trustee, v. Miller, Miss., 183 So. 378.

Having the right, under the circumstances, to use a substituted barricade, that right had only one qualification, and that is that the barricade shall be such that it could be readily or easily seen by those approaching it on the usable portion of the road and for a sufficient distance to safely allow the traveler to stop before arriving at the barricade. But the term "readily or easily seen" is to be interpreted as follows as respects the two following situations,—(1) readily and easily to be seen by those exercising ordinary care on a completed highway, and (2) readily and easily to be seen by those exercising vigilant caution and keeping a constant lookout on a highway under construction, if and when there is sufficient in the facts and circumstances to put the traveler on notice that the highway is, in fact, under construction.

When, under circumstances such as we have here before us, the contractor has supplied a barricade which fulfills the stated qualifications, he is within his legal rights and, of course, is guilty of no negligence; hence it is immaterial so far as concerns any liability on the contractor's part whether an injured traveler was or was not guilty of negligence.

The evidence strongly preponderates that the trailer barricade with which appellees' decedent collided was one which could be readily and easily seen by a traveler in the exercise of ordinary care; but is not conclusive on that point. The evidence is conclusive, however, that the trailer barricade could be readily or easily seen by an approaching traveler who was in the exercise of a vigilant caution and keeping a constant lookout. The evidence is in point of fact so nearly without dispute on the latter issue that an opposite conclusion would have no more than what is properly termed a scintilla upon which to rest.

It is undisputed that the road here in question was

actually under construction. It follows from what has been said that if appellees' decedent knew that fact, a peremptory charge for appellant would have to be given. The remaining question is, then, whether the facts and circumstances shown in the evidence were sufficient to charge appellees' decedent with that knowledge. Upon that question appellees' case is weak almost to the point of extremity. We stated in the former opinion, 176 So. page 260, that "the present record contains enough to show that an impartial jury, under correct instructions, ought to find, and therefore probably would find, that the deceased knew or ought to have known that the road was under construction;" and we further stated that whether the verdict was against the overwhelming weight of the evidence on the stated point, we would not then decide, for the reason that the judgment was being reversed on other points.

Having thus pointed out in the former opinion the weakness of the case on the stated point, we had expected that, if it could be truthfully done, some further aid might be furnished one way or another in the matter of a more definite and dependable showing upon this issue. The present record discloses that some effort was made along that line, but for one reason or another these efforts were substantially of no help.

We must now proceed, therefore, to a decision upon the present record, and so doing we have but little hesitancy, in fact none at all, in pronouncing the verdict upon the issue mentioned in the two preceding preceding paragraphs as being contrary to the overwhelming weight of the evidence. We do not comment on all phases of the evidence on that point, since the case is to be retried; but there are at least six outstanding major circumstances of fact which ought to have conveyed to any traveler of average intelligence and normal powers of observation the notice, and to such an extent as to be equivalent to knowledge, that the road was then under construction, and this does

not include the large "Road Under Construction" sign at the forks thereof in the southern portion of the town of Belzoni; and these six evidentiary features are without substantial dispute. Our only doubt on this question is whether appellants were entitled, or not, to a peremptory instruction upon it; but as we have already ruled against the peremptory in the former opinions, we do not consider that the situation is such as to justify us in setting aside or overruling the law of the case.

One of the six outstanding or major circumstances to which we have referred is this: The evidence shows that the concrete was being laid at the rate of about 700 to 800 feet per day. The trailer barricade was being moved southward day by day as the concrete became hard enough to stand the travel to which it would be subjected. It was moved southward 700 to 800 feet on the afternoon of the accident and stood then squarely next to the green and unfinished work. How could a traveler, who must have his eyes on the road at least within every 100 or 200 feet, have failed to observe on a cloudless afternoon that this was new concrete work, and becoming newer and newer as he proceeded south, and that he was approaching the end where the newness of the work would allow him to proceed no farther, and where in consequence he should expect a barricade to stand? But, as stated, there are not less than five other cumulative features, and some of them even stronger than the above.

We think it possible that the jury may have been misled by the wording of the instruction given at the request of appellees, not numbered in this record but appearing at page 488, transcript. But if they had read and understood all the instructions and considered them together and as a whole, as they should have done and as we must assume they did do or tried to do, the law was fairly well presented, as regards the several aspects of the case, although not so distinctly by either side as could have been done. It is said that the instructions largely followed

the very language of the court in Graves v. Johnson. We have heretofore cautioned against the use of excerpts from opinions in the drawing of instructions. See Crawford v. City of Meridian, 174 Miss. 875, 879, 165 So. 612. Language which is apt in a judicial opinion and which is plainly to be understood by members of the legal profession in the connection with which it is used, may not be so to the laymen on the jury, particularly as they have not the advantage of the entire context.

Reversed and remanded.