ETHEL MILLER, APPELLEE, v. ABEL CONSTRUCTION COMPANY, APPELLANT.

300 N. W. 405

FILED OCTOBER 17, 1941. No. 31029.

*Stewart, Stewart & Whitworth* and *Robins & Yost*, for appellant.

*Sidner, Lee & Gunderson, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER and YEAGER, JJ., and POLK, District Judge.

POLK, District Judge.

This is an action for personal injuries arising out of a collision between an automobile in which the plaintiff was

riding with her husband and a road roller being used at night by the defendant in the construction of a highway in Dodge county, Nebraska, between Winslow and Uehling. From a verdict and judgment in favor of the plaintiff for $3,000 the defendant appeals.

The record shows that in the forenoon of July 23, 1939, plaintiff and her husband left their home in Fremont by automobile for a trip to the home of the plaintiff's sister living east of Oakland. Plaintiff rode in the front seat of the car, which was owned and being driven by her husband. They had made the trip many times that summer prior to the accident and knew that the road was under construction. On previous trips they turned east near Winslow to avoid going from Winslow to Uehling on account of the highway being under construction. On this day they drove from Fremont on highway 77 to the first barrier and signs south of Winslow, drove around the barrier and signs, and continued on north driving around a barricade at the intersection of the highway with the railroad tracks near Winslow and continued on the highway, turning east south of Uehling. On the return trip the plaintiff and her husband left the home of her sister about 9 o'clock p. m., going to Oakland and then turning south on highway 77. They drove south on the highway until they reached the barriers near Uehling. At this point they left the highway, went through a portion of Uehling, and back onto the highway south of the barriers, and continued south thereon to the place where the accident occurred, which was about six miles south of Uehling and three miles north of Winslow. Immediately prior to the accident one of the defendant's employees was driving a tractor pulling a road roller south on the west half of the highway at about five or six miles an hour, preparing it for a coat of oil. As the automobile in which the plaintiff and her husband were riding approached the scene of the accident, another car came from the south. Each driver dimmed his lights, and as they passed both cars were going between 30 and 35 miles an hour. Immediately on passing, the plaintiff and

her husband saw for the first time the road roller about 10 to 15 feet away. Their car crashed into it before plaintiff's husband could apply the brakes or turn to the side.

The alleged acts of negligence of the defendant consist of the following: (1) That the defendant operated the road roller at night on a public highway without having it painted a distinguishing color from the road; (2) without having lights on said roller; (3) without displaying any warning signals; and (4) without providing suitable reflectors on said roller.

The uncontradicted evidence shows that the rear of the roller was painted yellow; that there were no flares or warning signals placed in the highway, and that there were no reflectors on the rear of the roller.

The evidence, then, is without conflict on all of the alleged acts of negligence except the failure to have a red light displayed on the rear of the roller. In this connection the plaintiff contends that it was not only the duty of the defendant to have a red light displayed on the rear of the road roller, but that the defendant violated this duty. If there was a duty here imposed on the defendant, it was by reason of the common law and not by statute, since section 39-1174, Comp. St. Supp. 1939, specifically exempts road rollers and road machinery from displaying red lights. Assuming, for the sake of argument, that defendant had a common-law duty to keep a red light on the rear of the road roller, we think that the evidence is conclusive that it was so equipped. While it is true that the plaintiff and her husband and the witness Heller testified that they did not see a red light, they did not testify that a red light was not displayed. Plaintiff and her husband place the distance the roller was from them at the time they first observed it at 10 to 15 feet, having just emerged from the lights of the Heller car. The testimony of these witnesses that they did not see a red light is purely negative in character and of no probative force on the question of whether a red light was displayed. The defendant's witnesses Rabe, McMurtry, Brokaw, Doncski and Johnson

testified positively that the red lantern on the roller was lighted prior to the collision. In the face of this positive testimony that the red light was displayed, the fact that there is testimony of one or more witnesses that they did not see it will not prevail against the positive testimony of several witnesses in making an issuable fact for the jury, where the attention of the witnesses was not directed toward the red light at the time it is said to have been displayed, and where their position, mental condition and the surroundings were not such as would raise a presumption that they would have seen it if it had been displayed. *Dodds v. Omaha & C. B. Street R. Co.,* 104 Neb. 692, 178 N. W. 258; *Oliver v. Union P. R. Co.,* 105 Neb. 243, 179 N. W. 1017; *Hook v. Payne,* 109 Neb. 252, 190 N. W. 581; *De Griselles v. Gans,* 116 Neb. 835, 219 N. W. 235; *Fischer v. Megan,* 138 Neb. 420, 293 N. W. 287. We hold that the evidence was without contradiction that a red light was displayed and that this part of the evidence did not present an issuable fact for the jury.

The record showing that the rear of the road roller was painted yellow, that there were no flares or warning signals placed on the highway, and that there were no reflectors on the roller, and having concluded that the evidence shows that there was a red light displayed thereon, we shall turn our attention to the duty of the defendant toward the plaintiff under the circumstances.

In determining the duty of the defendant company, we should bear in mind that it did not owe the plaintiff a greater duty because she was a guest rather than the driver of the car. The defendant was bound to exercise one standard of care toward all persons lawfully on this particular highway whether guest or driver. However, this standard of care is not the same as that required had the accident occurred on an open highway, not under construction and open to the general public. A traveler on a public highway open to the general public may assume that the highway is reasonably safe for one exercising ordinary care for his safety, but this rule is subject

to some qualification. When a part of a highway is undergoing construction and this portion is barricaded off from the general public by appropriate signs, a traveler thereon having knowledge that the highway is undergoing construction has a duty to exercise a greater care for his own safety than if he were traveling on an open highway open to the general public. He must keep a constant lookout and vigilant caution for his safety.

While it has been said that the law requires only one degree of care, and that is ordinary care under the circumstances, yet unusual and peculiar circumstances, creating a greater risk, require a greater degree of care for one's safety. This distinction is recognized in the case of *Hall v. Incorporated Town of Manson,* 90 Ia. 585, 58 N. W. 881, wherein the court said:

"What will constitute ordinary care, however, will depend upon circumstances, and these may well include a consideration of the fact as to whether the accident occurred in the daytime or nighttime; and, if at night, it might be that more caution and watchfulness would be required to be shown in order to establish the fact that the plaintiff was, in fact, at the time of the injury, in the exercise of ordinary care. In either case the degree is the same—ordinary care—but the facts establishing such a degree of care may be different."

The rule is stated in *McClelland v. Scroggin,* 48 Neb. 141, 66 N. W. 1123, as follows:

"The care which may be termed ordinary is such a degree of care as a prudent and reasonable man would exercise under the existing circumstances and conditions. Where the known risks are enhanced the degree of care should correspondingly increase."

In the case of *Grosz v. Bone,* 48 S. Dak. 65, 201 N. W. 871, the court held that the driver of an automobile, knowing that the highway was being resurfaced, should have anticipated the torn-up condition of the road, and that a greater degree of care in the operation of his car would be necessary to avoid accident.

The duty of a driver going around a barricade in a highway is set forth in the following language in the case of *Shawano County v. Froemming Bros.*, 186 Wis. 491, 202 N. W. 186:

"When Glawe went by the barrier as he did he was bound to know that it was a warning of possible danger ahead on the highway, and it was his duty, for his own protection in the exercise of reasonable and ordinary care, to ascertain what such danger was before proceeding, or, if proceeding, to so have his vehicle under control that dangers might be averted. Such warning did away with the presumption that would otherwise apply that the highway was, in accordance with law, reasonably safe for public use."

In holding that a traveler on the highway in question was required to exercise a higher degree of care than on an open highway not under construction we are not unmindful of the holding of this court in the cases of *Frickel v. Lancaster County*, 115 Neb. 506, 213 N. W. 826, and *Boomer v. Lancaster County*, 116 Neb. 718, 218 N. W. 751, wherein the duty of a county in repairing a highway is defined as requiring the county "to use reasonable and ordinary care to maintain the highways reasonably safe for the traveler using them while in the exercise of reasonable and ordinary care." We are merely holding that the duty to use reasonable and ordinary care on the part of a traveler on a highway under construction requires the exercise of a greater degree of caution than on an open highway open to the general public.

In view of this duty of a traveler on an uncompleted highway, the correct rule prescribing the duty of the defendant contractor is that, where a highway undergoing construction has not been completed by the contractor or accepted by proper authorities and is being used permissively in a limited manner by local residents, it is only required that the highway be kept and maintained in a reasonably safe condition for the use of those traveling thereon who are at the time exercising reasonable care,

under the peculiar circumstances and conditions by which they are at the time confronted, by keeping a constant lookout and vigilant caution for obstructions incident to the progress and completion of the work. *Graves v. Johnson,* 179 Miss. 465, 176 So. 256; *Graves v. Hamilton,* 184 Miss. 239, 184 So. 56; *Myers v. Sanders,* 189 Miss. 198, 194 So. 300; *Gordon v. Illinois Central R. Co.,* 190 Miss. 789, 1 So. (2d) 772.

In the case of *Myers v. Sanders, supra,* we find a case very similar to the instant one. The deceased, Sanders, was riding as a guest in a truck upon a highway under construction. The accident occurred when the rear wheels of the truck ran across the edge of a pile of sand which had been unloaded on a portion of the highway for use in building head walls to a culvert. The accident occurred immediately following the passing of two cars, the driver of the car in which plaintiff's decedent was riding as a guest failing to see the pile of sand because of dust from the oncoming car. The highway was undergoing construction and was properly barricaded with signs, "Caution," "Road Under Construction," and "Detour." The deceased was thrown from the truck and was killed. The load of sand had been hauled the afternoon of the day of the accident after the deceased and other members of the party in the truck had previously passed over the highway. The occupants of the truck, including the deceased, knew that the road was under construction at the time of the accident. The contract required that the highway be left open while the construction was in progress in such a manner as to permit local traffic thereon, and the road at the place of the accident was being used by a greater proportion of the traveling public notwithstanding the detour and warning signs. The court held that the wife and children of the deceased could not maintain the action, and that the defendant should have been entitled to a peremptory instruction in its favor. The court, in announcing the rule heretofore set forth, said:

"The construction not having been completed by the

contractor or accepted by the proper public authorities as a completed highway under the terms of the contract, it was only required that the same be kept and maintained in a reasonably safe condition for the use of those traveling thereon and exercising a vigilant caution to keep a constant lookout for obstructions incident to the progress and completion of the work remaining to be done. *Graves v. Johnson,* 179 Miss. 465, 176 So. 256. Also in the companion case of *Graves v. Hamilton,* 184 Miss. 239, 184 So. 56, 57, the principle is recognized that a completed highway should be kept and maintained in a reasonably safe condition for those exercising ordinary care in traveling thereon, but when there are sufficient facts and circumstances to put a motorist on notice that a highway is under construction, the duty of the contractor in regard thereto only requires that it be kept and maintained in a reasonably safe condition for use 'by those exercising vigilant caution and keeping a constant lookout.' It cannot be questioned that this pile of sand could have been readily and easily seen by a motorist in the daytime if he were exercising a vigilant caution and keeping a constant lookout for obstacles, the presence of which he should have anticipated on a road under construction, except for the fact that in this instance his vision was obscured by the dust raised by another car or truck and for which the contractor was not responsible.

"We are of the opinion that the failure of the driver of the truck, from which Mr. Sanders fell, to anticipate that his vision might be obscured by the dust from a passing car or truck, and his failure to have his own truck under such control as a vigilant caution and constant lookout would have occasioned, and so as to be able to stop his truck in such an emergency instead of proceeding on through the dust, was the sole proximate cause of the accident and injury complained of; and that therefore there could be no recovery against the appellant contractor under such circumstances. The proof discloses that the contractor had done everything that he could to keep the through

traffic off the portion of the highway then under construction that would have been consistent with his obligation to permit local traffic thereon; and in our opinion the placing of the load of sand in the edge of the gravel portion of the highway for use in building the head walls of the culvert underneath the same at that place was not a negligent but a reasonable exercise of his right to carry on the work to completion, since he left a sufficient clearance for the local traffic and for others to pass in safety when exercising the vigilant caution and constant lookout required of them in traveling over a highway known to be under construction."

In the case of *Graves v. Johnson*, 179 Miss. 465, 176 So. 256, the court states the rule in the following language:

"As to a completed highway, actually or impliedly accepted by the proper public authorities as such and which has been put into general and unrestricted use as a highway, complete in all the respects for which all the public has a right to use such a thoroughfare, a traveler thereon has the right to assume that the highway is in a reasonably safe condition for travel and is free from obstructions and he need not keep his eyes constantly fixed on the path of the highway or look far ahead for defects which should not exist, nor shall he be absolutely required to exercise such an extreme vigilance as to see in any and all events such obstructions as bumpers in the road, or a chain stretched across it; nevertheless as to completed and accepted highways, the traveler must use ordinary care. * * *

"But the highway here was under construction. It was not an accepted, completed highway, open to all the public for unrestricted use in all respects as is a completed and accepted thoroughfare; but its condition was such that any member of the public who used it, when he had knowledge or notice sufficient in the eyes of the law to amount to knowledge that the highway was under construction, was bound to anticipate that at some near point in his progress the usable portion would end and the portion

actually under construction and unfit for use would begin, and that he could not go forward under the assumption that the way was open and clear throughout, but is put upon guard and under the obligation of vigilant caution to keep a constant lookout for the end of the used portion and the beginning of the portion unfit for use and not open for travel."

We have examined the entire record and do not find any actionable negligence on the part of the defendant. The entire rear portion of the roller that could be painted was painted yellow. The record is silent as to any other color or combination of colors that would have rendered the roller more visible. While plaintiff complains that the roller was without reflectors, the record is silent as to the type, color or size that should have been used. It seems reasonable to presume that, inasmuch as plaintiff's husband did not see the red lantern on the roller, he would not have seen a reflector, a less effective signal. Nor is the want of flares evidence of the lack of due care. A definite portion of the highway was under construction and barricaded off and closed to the general public by appropriate signs and signals. The plaintiff and her husband had actual knowledge that the highway was under construction, having passed over it several times previous to the accident, and the highway itself on the evening of the accident showed it was under various stages of completion. Due care did not require that the defendant place flares at intermediate points during the progress of the work. *Gordon v. Illinois Central R. Co., supra.*

We have not considered any alleged negligence on the part of the plaintiff's husband as negligence of the plaintiff, since negligence on his part under the circumstances would not be attributable to her. We have discussed the duty of the driver of the car as it related to the standard of care required of the defendant and as it had a bearing on the proximate cause of the accident. The burden was on the plaintiff to show that there was a negligent act or omission of the defendant and that it was the proximate

cause of the plaintiff's injury or a cause which proximately contributed thereto. *Sailors v. Lowden, ante,* p. 206, 299 N. W. 510. Our conclusion is that the plaintiff has not sustained this burden and has failed to make a case of actionable negligence against the defendant, and that the sole proximate cause of plaintiff's injuries was the negligence of her husband in driving his car in the nighttime on the highway, knowing it was under construction, at a rate of speed and under such control that he could not stop and avoid such machinery thereon as was necessary to the progress of the work, and which he should reasonably expect to encounter on an uncompleted highway. *Roth v. Blomquist,* 117 Neb. 444, 220 N. W. 572; *Hendren v. Hill,* 131 Neb. 163, 267 N. W. 340; *Redwelski v. Omaha & C. B. Street R. Co.,* 137 Neb. 681, 290 N. W. 904; *Fischer v. Megan,* 138 Neb. 420, 293 N. W. 287; *Sailors v Lowden, ante,* p. 206, 299 N. W. 510.

Having arrived at this conclusion, it is unnecessary to consider other assigned errors. The trial court should have sustained defendant's motion to direct a verdict in its favor at the conclusion of all the evidence. The judgment of the district court is accordingly reversed and the cause dismissed.

REVERSED AND DISMISSED.